COMMONWEALTH *vs.* JOHN W. DERBY.

Middlesex.     January 12, 1928. — March 2, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Assault,* With intent to rape. *Evidence,* Presumptions and burden of proof, Competency, In rebuttal, Consciousness of guilt. *Witness,* Cross-examination.

At the trial of an indictment charging assault of a woman with intent to commit rape upon her, there was evidence of the assault by the defendant. She testified that the defendant accosted her, "lunged right down on top" of her and knocked her down; and that she felt that "he loosened up on me"; that she offered him "her pocket book or anything" if he would let her go, and he said, "Oh, I don't want your pocket book," and released her. While her stockings were somewhat torn at the knee because of her contact with the ground, there was no evidence that her clothing had been displaced or disarranged. *Held,* that the question of the criminal intent of the defendant was for the jury to determine in

view of all the circumstances, and it was proper to refuse to order a verdict of not guilty.

At the trial of the indictment above described, it appeared that the defendant, upon being interviewed by a police officer, had consented, without being arrested, to go to the police station and there to be placed in a line with other men for identification by the woman. At the confrontation she said nothing that was audible to the defendant. She testified in response to questions by the Commonwealth as to how many times she had seen the defendant and, asked when the next time was after the assault, replied, "When I went in and picked him out as the man." A motion that the last answer be struck out was denied. *Held*, that the denial was proper.

There was evidence at the trial above described that the defendant, previous to accosting the woman, had been in a motor vehicle with others, including a woman, and had been drinking intoxicating liquor, and that he at first informed the police officers that no woman was in the party on the trip, but later admitted that a woman had been with them. Subject to an exception by the defendant, one of the party was asked in cross-examination by the Commonwealth whether there was any reason why the defendant "should have desired to hide the names of the people that he was with . . . that you know of," and answered, "No." *Held*, that it was a proper exercise of discretion by the judge to admit the question and answer.

It also was a proper exercise of discretion for the trial judge to permit the defendant in cross-examination to be asked if he knew of any animus, prejudice or bias as a reason why the prosecuting witness should desire to injure him; the question did not call for an opinion.

At the trial of the action above described, a witness for the defendant, who was one of the men who had stood in line with the defendant to be viewed by the woman at the police station, in answer to questions of the defendant's counsel testified that the prosecuting witness in his presence as a spectator said to the police officer at the time of the confrontation and referring to the identification of the defendant, "I don't," or "I can't say," or "I am not positive." In rebuttal and subject to exception by the defendant, a police officer called by the Commonwealth was allowed to testify that the woman said, at the time of confrontation of the four men at the station where the defendant stood first in the line, "It's Number 1. It is not the other three." It did not appear that the defendant could hear this statement. *Held*, that, while the evidence was inadmissible as proof of identification, it was admissible in contradiction of the material statements of a witness for the defendant.

At the trial of the indictment above described, there was evidence that, when interviewed by the police before his arrest, the defendant had made false statements as to his having been at a certain house and as to no woman having been in the party riding in the automobile. The trial judge declined to charge the jury in terms that they could consider the conduct of the defendant after the time of the assault to ascertain if such conduct justified an inference of consciousness of guilt, or whether his conduct was that of a man unconscious of having committed the crime charged; that, before evidence of acts indicating

consciousness of guilt could be considered, the law required that there must be a causal connection or some probative relation between such evidence and the crime charged; and that the evidence relied on by the Commonwealth as indicating consciousness of guilt was to be considered against the defendant only if it was consistent with consciousness by the defendant of guilt of the crime charged, and was inconsistent with any other theory. *Held*, that

(1) It was for the jury to decide whether the defendant's false statements were made to protect himself from suspicion or prosecution because of guilt or whether they were made to shield some of his companions from publicity;

(2) No error was committed in refusing to give the instruction asked for in terms;

(3) Instructions given as to the sufficiency, degree of proof, weight and effect of evidence tending to show consciousness of guilt sufficiently covered the requests and protected the defendant's rights.

INDICTMENT, found and returned on October 4, 1927, charging that the defendant on September 26, 1927, assaulted Florence I. Hogg with intent to commit rape upon her.

In the Superior Court, the indictment was tried before *Dillon*, J., on October 13, 1927, a stenographer having been appointed and the case brought within the provisions of §§ 33A–33G, added to G. L. c. 278 by St. 1925, c. 279, § 1, and amended by St. 1926, c. 329, §§ 1–5. Material evidence is stated in the opinion. The defendant was found guilty on October 18, 1927, and appealed on October 22; on November 25, the notice in writing of completion of the record by the clerk of courts was given, and on December 3, the defendant filed the assignment of errors stated in the opinion.

The portion of the charge to the jury relating to consciousness of guilt was as follows:

The "Commonwealth calls your attention to certain conduct on the part of the defendant, which it asks you to believe is evidence of consciousness of guilt.

"When, then, is consciousness of guilt? Our writers on jurisprudence contend that the commission of a criminal offence creates a moral impression that is characteristic, that can be identified by the outward manifestations of the same; in other words, that the commission of a criminal act leaves a trace or a smear upon the mentality of the individual,

that prompts him to show by his conduct that he has got a guilty conscience, or, stating it another way, that he is conscious of guilt. It is the outward manifestations that the law takes into consideration, because it is impossible to look into the mind of the individual, and we find in the cases in the criminal law, many decisions dealing with various phases of consciousness of guilt.

"Perhaps the best known instance, the one that is most familiar to the layman, is the flight of the accused. Where the criminal betakes himself in flight, hurries with the utmost speed from the scene of the crime, that is accepted as evidence of consciousness of guilt, and it is imbred in the law, and it is expressed even in the Scriptures, where they say, 'The wicked flee when no man pursueth, and the innocent is as bold as a lion,' or something to that effect.

"Likewise you have heard of the instances where the efforts of the violator of the law to hide or to destroy the weapon that was used, have been received in courts as evidence of consciousness of guilt. And likewise the efforts to destroy the bloody garments, in an effort to eliminate traces of the crime, have likewise been accepted as evidence of consciousness of guilt. But the old truism and the old axiom that perhaps is more fundamental and at the bottom of it all, is the one that says, 'Actions speak louder than words'— actions of the accused, in contrast with what he says. What I have said, Mr. Foreman and gentlemen, has to do with preliminary discussion of some of the ordinarily accepted views on the general subject of consciousness of guilt.

"But in this case it is claimed that certain false statements made by the defendant — if you find, of course, that there were any such false statements — are evidence of consciousness of guilt. The Commonwealth contends that to these police officers of the town of Wakefield, charged with the enforcement of the law in that community, that this defendant made certain statements as to where he was at certain times, or, perhaps, more particularly, where he was at a time between, we will say, half past five and twenty minutes of eight on that evening.

"It is contended that at the first interview with the police

officers he said that he left the city of Lawrence at a given time — whether it was half past five, or some other time, is of course for you to say — and that he arrived at a certain other point at a given time — and which, it is for you to say from the testimony — and then your attention is called to his testimony upon the stand in the course of this trial, in which he gave other and different times that he left Lawrence or that he was at certain other places.

"If you find that he made false statements in those interviews with the police, and you find that those statements related to his consciousness of criminal offending and related to a purpose to deceive the officers, you would be warranted in accepting such conclusions, if you reach them, as evidence of consciousness of guilt, and you have a right to weigh such evidence of consciousness of guilt, in conjunction with other evidence of identification of the defendant, in saying whether or not the defendant was the assailant who attacked the young woman at the time stated in the indictment."

*G. M. Poland,* (*F. H. Davis* with him,) for the defendant.

*F. A. Crafts,* Assistant District Attorney, for the Commonwealth.

BRALEY, J.  The defendant's motion for a directed verdict of not guilty and the request that upon all the evidence the defendant could not be found guilty of an assault with intent to commit rape, were denied rightly.  On the evidence of the prosecutrix the jury could find the following facts: On September 26, 1927, Florence I. Hogg, a single woman twenty years of age, came by train into the Greenwood Station in the town of Wakefield at about twenty-five minutes past six o'clock in the afternoon and left the station to walk to her home.  As she walked she heard footsteps behind her and when she reached the end of a meadow that partially skirted the street, and while she was under a street light, the person in the rear came up and said, "Good evening . . . It is lovely weather we have been having, isn't it," to which she answered "Yes."  The man, who accosted her and whom she positively identified at the trial as the defendant, was by her side barely touching her hand or elbow.  The prosecutrix started to walk faster and the defendant followed more

rapidly, "lundged [lunged] right down on top" of the prosecutrix "and knocked . . . [her] down." Her outcries attracted the attention of the residents of a neighboring house, and she felt that "he loosened up on me." "I said, 'Please let me go. I'll give you my pocket book or anything', and he says 'Oh, I don't want your pocket book,'" and released her. While the stockings of the prosecutrix were somewhat torn at the knee because of her contact with the ground, there was no evidence that her clothing had been displaced or disarranged. It is plain there was evidence of an assault, and the criminal intent of the defendant was for the jury to determine in view of all the circumstances. *Commonwealth* v. *Thompson*, 116 Mass. 346. *Commonwealth* v. *Bemis*, 242 Mass. 582. We cannot say as matter of law that the evidence was so slight that it was the duty of the court to direct a verdict of not guilty. *Commonwealth* v. *Hollis*, 170 Mass. 433, 436. The fifth assignment of error cannot be sustained.

The defendant on the day of the assault had spent the afternoon with two other men riding about the city of Lawrence in an automobile where he admitted that he drank liquor. A young woman, a friend of the family of one of the defendant's companions, rode with them from Lawrence to Melrose where she left the party. The defendant alighted in Wakefield to walk to his home in Melrose, an adjoining town, and the automobile drove away. The prosecutrix in cross-examination testified that she was assaulted at twenty minutes before seven in the evening, while there was evidence that the automobile did not reach Wakefield until seven o'clock, and that notice of the assault was received at the police station at quarter before seven. The conflicting statements as to time in so far as material were for the jury. It was uncontradicted that on the morning of the day after the assault the defendant, a journeyman plumber, went to his work wearing the same clothes that he wore the day before. A police officer went to the house where the defendant was at work and asked him to go to the police station where he told the officers of his trip to Lawrence on the previous day, and gave the names of his male companions.

It appeared in evidence that previously a police officer had asked the defendant where he had obtained intoxicating liquor to which the defendant replied at "Bouchet's." But upon being asked at the station where Bouchet lived he denied ever having been there, and when asked why he had at first denied that a woman had accompanied the party from Lawrence to Wakefield, the defendant stated that he did not want her involved in the affair. The defendant, who had not been arrested, assented to being placed at the station in a line with other men for identification by the prosecutrix, but she said nothing at the confrontation that was audible to the defendant. The prosecutrix however testified in response to questions by the Commonwealth as to how many times she had seen the defendant and when the next time was after the assault replied, "When I went in and picked him out as the man." The defendant moved that this answer be stricken out, and the first assignment of error is to the refusal of the motion. We perceive no error. The answer to the question was clearly responsive.

The jury could find that the defendant at first informed the police officers that no woman was in the party on the trip, but later admitted that a woman had been with them. A member of the party, one Donegan, a witness for the defendant, was asked in cross-examination by the Commonwealth, "There wasn't any reason why the defendant, Derby, should have desired to hide the names of the people that he was with, was there, that you know of?" The answer was "No," and the admission of this question subject to the defendant's exception is the second assignment of error. But the extent of the cross-examination was within the sound discretion of the judge, which does not appear to have been abused. *Commonwealth* v. *Sacco*, 255 Mass. 369.

The third error alleged is that the Commonwealth was also permitted to ask the defendant in cross-examination if he knew of any animus, prejudice or bias as a reason why the prosecutrix should desire to injure him. The question did not call for the opinion of the witness, but whether he knew of any reason why he should have been accused. It was admissible for reasons just stated.

As to the fourth assignment of error, a police officer called by the Commonwealth was allowed to testify that the prosecutrix said at the time of confrontation of the four men at the station where the defendant stood first in the line, "It's Number 1. It is not the other three." It did not appear that the defendant could hear this statement. As proof of identification it was inadmissible. *Commonwealth* v. *James,* 99 Mass. 438. But one Urquhart, a witness for the defendant and one of the men who stood in the line, in answer to questions of defendant's counsel testified that the prosecutrix in his presence as a spectator said to the police officer at the time of the confrontation and referring to the identification of the defendant, "I don't," or "I can't say," or "I am not positive." The judge correctly ruled that in rebuttal of the evidence of this witness the officer could be asked what the prosecutrix did say in the conversation described. The evidence was not admitted in corroboration of the testimony of the prosecutrix but in contradiction of the material statements of a witness for the defendant.

The sixth, seventh, eighth and ninth assignments are to the refusal of the defendant's fourth, fifth, sixth and seventh requests for rulings. In substance the judge was asked to instruct the jury that they could consider the conduct of the defendant after the time of the assault to ascertain if such conduct justified an inference of consciousness of guilt, or whether his conduct was that of a man unconscious of having committed the crime charged; that, before evidence of acts indicating consciousness of guilt could be considered, the law required that there must be a causal connection or some probative relation between such evidence and the crime charged; and that the evidence relied on by the Commonwealth as indicating consciousness of guilt was to be considered against the defendant only if it was consistent with consciousness of guilt by the defendant that he committed the crime charged, and was inconsistent with any other theory. If the jury found that the defendant's statements to the police, that he had been to Bouchet's house, and that there was no woman in the automobile party, were false, it was for the jury to decide whether these statements were made to protect himself from

suspicion or prosecution because of guilt or whether they were made to shield some of his companions from publicity. *Commonwealth* v. *Sacco, supra.* The instructions of the judge as to the sufficiency, degree of proof, weight and effect of evidence tending to show consciousness of guilt sufficiently covered the requests and protected the defendant's rights. *Commonwealth* v. *Sacco, supra.* The entry must be

> *Exceptions overruled.*
> *Judgment affirmed.*