## COMMONWEALTH vs. KALMAN K. BRATTMAN.

Middlesex.   March 18, 1980. — September 30, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Rape.   Practice, Criminal,* Failure to make objection, Directed verdict, Instructions to jury.   *Evidence,* Hospital record.

At the trial of a defendant charged with assault with intent to commit rape, evidence that the defendant had committed an assault and battery on the victim, had attempted to restrain her, and had made sexual advances to the victim against her will was sufficient to warrant denial of the defendant's motion for a directed verdict.   [580-582]

At the trial of a defendant charged with assault with intent to commit rape, the judge's definition of rape as including "various types of touching so long as there is penetration, however slight, of a bodily orifice" was erroneous and created a risk of a miscarriage of justice, thus entitling the defendant to a new trial.   [582-586]

INDICTMENT found and returned in the Superior Court Department on December 12, 1978.

The case was tried before *Young, J.*

*Kalman K. Brattman,* pro se.

*Robert M. Raciti,* Assistant District Attorney, for the Commonwealth.

DREBEN, J.   After a jury trial, the defendant was convicted on an indictment charging assault with intent to commit rape and was acquitted on an indictment charging kidnapping.   The defendant, who appeared pro se both in the trial court and before this court, claims error in the denial of his motion for a required finding of not guilty,[1] and in a number of evidentiary rulings.   He also claims prosecu-

---

[1] This is the name given to the motions by the defendant although Mass.R.Crim.P. 25, 378 Mass. 896 (1979), was not in effect at the time of trial.

torial misconduct. Although there was no error in the denial of the defendant's motion for a required finding of not guilty, we conclude that there is a substantial danger that the jury were misled by an erroneous definition of rape in the instruction of the judge and that the erroneous instruction may have materially influenced the verdict. Accordingly, we reverse because this is one of the exceptional occasions where "we think that the interests of justice entitle the defendant to a new trial", although the ground for reversal was not raised either in the trial court or on appeal.[2] *Commonwealth* v. *Dunphy*, 377 Mass. 453, 454 (1979). See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). Also see *Bloch* v. *United States*, 221 F.2d 786, 788 (9th Cir.), rehearing denied, 223 F.2d 297 (1955); *Herzog* v. *United States*, 235 F.2d 664, 666-667 (9th Cir. 1956), and cases cited; Fed.R.Crim.P. 52(b).

1. The defendant moved for a required finding of not guilty after the Commonwealth's opening statement, but that motion "need not concern us, for a judge cannot be required to direct a verdict on an opening." *Commonwealth* v. *Hartford*, 346 Mass. 482, 489 (1963). *Commonwealth* v. *Binnette*, 351 Mass. 704 (1966). The defendant did not renew his motion after the Commonwealth rested, but presented it only after both sides had rested. We need not consider when the defendant's motion is to be assessed, see *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980), because both at the time the Commonwealth had rested and at the time both parties had rested, there was sufficient evidence to warrant submission of the case to the jury.

Our standard of review is whether the evidence in the light most favorable to the Commonwealth was sufficient to satisfy a rational trier of fact of the existence of each of the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979).

---

[2] Subsequent to oral argument, the panel invited and received supplemental briefs on the question whether the judge's charge relating to the definition of rape was erroneous, and, if so, the legal consequences of that error.

*Commonwealth* v. *Casale,* 381 Mass. at 168. *Commonwealth* v. *Walter, ante* 255, 257 (1980).

We summarize the evidence in the light most favorable to the Commonwealth. The complainant was stopped on September 11, 1978, in Harvard Square by the defendant, who asked her for directions. She answered that she didn't know the area well and was herself looking for the post office. The defendant said he knew where it was and offered to take her there. She accepted and while they were walking together, the defendant grabbed her by the arm, pulled her into a building, and told her he wanted to show her something. She became fearful. The defendant next placed his hand in the small of her back and ushered her first into the elevator and then into his apartment. Once inside, he urged her to sit down. While she was sitting on the couch, the defendant approached her, told her "how radiant" she was, that he wanted to see her eyes, and took off her glasses. He then grabbed her shoulders, pushed her down on the couch, got on top of her and attempted to kiss her. Frightened, the complainant fought back, pushed his face away and told him to stop. The defendant would not get up. He got his hand inside her blouse and squeezed her left breast. She felt his hand near her belt. She began to talk very fast and told him that she did not believe in "premarital sex". The defendant then stopped. He said that he thought "that was wonderful". After telling her a story about a woman who had similar beliefs as to premarital sex, only to discover after marriage that her husband was impotent, the defendant permitted the complainant to leave the apartment.

The complainant was upset and on her way back to her dormitory was almost hit by a car. At the dormitory, a fellow student saw her crying hysterically. The complainant related that she had been attacked and that someone had tried to rape her. The fellow student informed the college administration, and the police took the complainant to the University Health Services. The complainant repeated the story of her attack to the police. The medical records of the University Health Services indicate that the complainant had trauma to her left breast.

We cannot say, as a matter of law, that the evidence was so slight that the defendant's motion for a required finding of not guilty should have been granted. There was evidence of an assault and battery and of an attempt to restrain the complainant. Contrast *Commonwealth* v. *Merrill*, 14 Gray 415, 417 (1860). There was evidence of a struggle and also evidence that the defendant had made sexual advances to the victim against her will. In these circumstances, the question whether the defendant had an intent to commit rape was one for the jury. *Commonwealth* v. *Derby*, 263 Mass. 39, 44 (1928). *Commonwealth* v. *Freeman*, 352 Mass. at 561. See *Commonwealth* v. *Bemis*, 242 Mass. 582, 586 (1922).

2. We believe, however, that the definition of the offense of rape given by the judge requires reversal. In his initial charge, the judge defined assault and instructed the jury that they must find a specific intent to rape. In instructing the jury that under the law rape includes more than traditional intercourse, he charged:

> "Under our law as it stands today, the law prohibits more than the traditional forced vaginal intercourse of a man with a woman. Today, the law defines rape as any forcible intrusion — that is, by force or by threat of force — any forcible intrusion of a part of the body of one person into the, a bodily orifice of another person.
>
> "So rape, under our law today can encompass homosexual rape; it can encompass oral and anal intercourse as well as vaginal intercourse. It can encompass various types of touching, so long as there is penetration, however slight, of a bodily orifice of the other person."[3]

The jury were troubled by the definition given in the judge's initial charge and posed the following question after

---

[3] The judge added also, "Now, there is no suggestion in this case that [the complainant] was raped. But you need to know the definition of rape, because this charge requires a specific intent to rape [the complainant]."

they had commenced deliberations: "We would like to have the legal interpretation between 'intent to commit rape' and 'intent to have sex'." After receipt of the question from the jury, the judge explained that if "the person who is assaulting" intends "to overcome her will either by force or by the threat of force and then have sexual intercourse or unnatural sexual intercourse, as I have defined to you previously, that is assault with intent to rape."

The judge did not again define rape, and the only definition given was the one in his initial charge. In this case, it is difficult to consider the instructions as being corrected by the jury's normal common sense view of rape. The charge, taken as a whole, instructed the jury that rape under the law includes more than traditional intercourse, that they were not to use the layman's ordinary meaning of rape, but rather were to apply the definition given by the judge. That definition was erroneous.

The general definition of rape in G. L. c. 277, § 39 (as appearing in St. 1974, c. 474, § 7), namely, "[s]exual intercourse or unnatural sexual intercourse by a person with another person who is compelled to submit by force and against his will or by threat of bodily injury", was given more specificity in *Commonwealth* v. *Gallant,* 373 Mass. 577, 581-585 (1977). *Gallant* held that the rape statute was not unconstitutionally vague as applied to the defendant's act of fellatio with a child, and the Supreme Judicial Court defined the statutory terms as follows: "By sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission" (citations omitted). "Similarly, the definition of 'unnatural sexual intercourse' must be taken to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." 373 Mass. at 584. See also *Commonwealth* v. *Mamay,* 5 Mass. App. Ct. 708, 709-710 (1977), where this court held that rape encompassed penetration of a female sexual organ with

a finger. From these authorities, it can be concluded that, in general, acts which do not involve penetration of a genital or anal opening or penetration by a sexual organ, however distasteful and frightening to an unwilling partner, do not fall within the meaning of rape. See *Commonwealth* v. *Gallant,* 373 Mass. at 581-585; *Commonwealth* v. *Manning,* 6 Mass. App. Ct. 430, 434-435 (1978). See also *Commonwealth* v. *Zeitler,* 7 Mass. App. Ct. 543, 550 (1979).

In some cases, especially where the offense charged is rape, erroneous instructions may be limited and hence cured by evidence of the defendant's particular acts. *Commonwealth* v. *Manning,* 6 Mass. App. Ct. at 434-435. Cf. *Commonwealth* v. *Gallant,* 378 Mass. at 581 (asserted vagueness of statute to be assessed in context of evidence of the case at hand). Here, however, the facts do not limit the unduly broad definition given by the judge. The offense charged was not rape but assault with intent to commit rape. The intended act of rape was not established but could only be inferred. It is in this context, and in light of the particular evidence before the jury, that we assess the erroneous instruction and the possible prejudice therefrom to the defendant.

The judge's definition of rape left the jury free to find an intent to commit rape if the defendant had intended to force his tongue into the victim's mouth or into her ear, or to commit other acts of touching involving the penetration of any orifice. There was evidence of the use of force by the defendant to attempt to kiss the victim, to touch her breasts and other parts of her body. There was also, however, the complainant's undisputed testimony that the defendant ceased his endeavors immediately upon being told that she did not believe in premarital sex. In these peculiar factual circumstances, we conclude that the defendant may have been seriously prejudiced by the judge's instructions which permitted a guilty verdict if the judge found that he had intended to force, as the judge put it, "various types of touching so long as there is penetration, however slight, of a bodi-

ly orifice". While the evidence was sufficient to withstand the defendant's motion for a directed verdict and thus warranted a finding of intent to commit rape, the evidence also warranted a finding that the defendant intended to use force to commit acts short of rape in the hope of convincing the victim to consent to normal intercourse (i.e. that the victim's "no" would gradually become "yes"). The instructions given by the judge erroneously included such acts within his definition of rape.[4]

We accord the defendant no special attention because he appeared pro se.[5] While a defendant may insist on appearing pro se, *Faretta* v. *California*, 422 U.S. 806 (1975), he "is solely and individually responsible for his decision to do so and for the consequences resulting therefrom." *Commonwealth* v. *Brown*, 378 Mass. 165, 176 (1979). *Commonwealth* v. *Hanley*, 337 Mass 384, 394 (1958). He is not entitled to greater protection on appeal than a defendant who has availed himself of counsel. *Commonwealth* v. *Miller*, 4 Mass. App. Ct. 379, 382 (1976). The reason we reverse is that the defendant was convicted of a most serious crime on erroneous instructions which may have materially influ-

---

[4] We note that the jury were puzzled as to the defendant's intent. Although the jury question, see test, *supra* at 580, was taken by the judge to have been directed to the issue of consent, the judge's clear and repeated instruction in his initial charge that they had to find an intent to commit acts against the will of the complainant make it unlikely that the jury had any real question on that issue. It is, therefore, possible that the jury question was directed to the legal, as contrasted with the traditional, definition of rape. The question, what is the difference between "intent to have sex" (normal vaginal intercourse) and "intent to commit rape" may have been the inquiry, does rape, under some definition peculiar to the law, require less than what laymen view as intercourse. In any event, whatever the issue prompting the inquiry, the question shows the jury's concern and difficulty with the instructions.

[5] There is no question that the defendant acted most foolishly in this regard. See *Powell* v. *Alabama*, 287 U.S. 45, 69 (1932). A review of the transcript in this case shows that the tasks of the judge and the jury were made far more difficult by the rambling discourses and useless objections of the defendant. We note that the judge, despite the burden imposed upon him, was most solicitous of the defendant's rights throughout the trial and showed the utmost patience and courtesy.

enced the jury's appraisal of whether the defendant had intended to commit rape. See *Commonwealth* v. *Freeman*, 352 Mass. at 564; *Commonwealth* v. *Dunphy*, 377 Mass. 453, 458-459 (1979). There is a substantial risk that a miscarriage of justice has occurred, and, therefore, the defendant is entitled to a new trial.

We need only discuss one additional matter, as the other issues raised by the defendant are not likely to recur on retrial. The defendant claims that the medical records of the University Health Services were illegible and also contained material relating to "liability". See G. L. c. 233, § 79. The introduction of the report would not require reversal "because the references relative to liability added nothing to the complainant's own testimony at trial." *Commonwealth* v. *Cutter*, 9 Mass. App. Ct. 876 (1980). See *Commonwealth* v. *Concepcion*, 362 Mass. 653, 656 (1972). On retrial, however, any illegible portions as well as references to liability should be excluded on properly framed objections. *Commonwealth* v. *Cutter, supra.*

*Judgment reversed.*

*Verdict set aside.*