## Commonwealth *vs.* Willie Perretti.

Middlesex.   January 21, 1985. — May 14, 1985.

Present: Armstrong, Cutter, & Perretta, JJ.

*Arrest. Identification. Practice, Criminal,* Instructions to jury, Deliberation of jury. *Indecent Assault and Battery.*

Where the prosecution in a criminal case did not introduce in evidence an ordinance of the city of Cambridge under which the defendant had been arrested, this court disregarded the ordinance in resolving the validity of the defendant's arrest. [40]

Apart from an ordinance of the city of Cambridge prohibiting "peeping and spying," police officers had probable cause to arrest a man whom they saw standing in the early morning hours at a rear, uncurtained, apartment window, with his trousers open, wearing no underwear, and with his hands at his groin. [41]

At a criminal trial, there was no error in the admission of an out-of-court identification of the defendant made by the victim of an indecent assault and battery a few hours after the crime during a confrontation in a parking lot arranged by police officers shortly after the defendant's arrest on other charges. [41-42]

At the trial of a defendant charged with rape, there was no error in the judge's instructions to the jury on indecent assault and battery as a lesser included offense. [42-44]

At the trial of a criminal case the judge did not abuse her discretion in giving the jury a supplementary charge in accordance with *Commonwealth* v. *Tuey,* 8 Cush. 1 (1851), as modified by *Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973), based on her conclusion, on the second day of jury deliberations, that questions asked by the jury demonstrated that they were at an impasse. [44]

Indictments found and returned in the Superior Court Department on September 27, 1983.

The cases were tried before *Katherine Liacos Izzo,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Patricia A. McEvoy,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The defendant was found guilty by a jury of
assault and battery, indecent assault and battery, and breaking
and entering a dwelling house in the nighttime with the intent
to commit a felony. See G. L. c. 265, § 13A, § 13H, and
c. 266, § 15, respectively. On appeal,[1] he claims error in the
trial judge's denial of his motion to suppress his identification
and in the jury instructions. We affirm.

I. *Facts Relevant to the Motion.*

The facts are drawn from the judge's findings, which the
defendant does not challenge, supplemented where appropriate
by the evidence presented at the hearing on the motion to
suppress. At about 12:45 A.M., July 25, 1983, Cambridge
police Officers Sullivan and Walsh were on patrol duty when
they received a radio call that a woman's screams had been
heard coming from the second floor of 67 Dana Street. Upon
their arrival at that address, the officers went to the second
floor, where they were met by the victim. She told the police
that, shortly after she had gone to bed, she heard a noise, a
light went on, and a man was standing in her bedroom. She
struggled with him for several minutes, and he punched her
in the groin and upper part of her body.[2] The victim was able
to free herself from her assailant, run to her window, and
scream.

Sullivan testified that the victim described her assailant as
a dark-complexioned, white male with brown hair, about eight-
een years old, five feet six inches tall, about 155 pounds, and
wearing a dark jacket. The victim was taken to a hospital, and
the officers resumed their patrol duty.

Two hours later, about 2:45 A.M., Sullivan and Walsh re-
ceived a radio call that a suspicious person had been reported
at the rear of a dwelling house at 1 Dana Street, approximately
three blocks away from the earlier call at 67 Dana Street. This
call was also heard by Officers Hall and Santos, who were first

---

[1] The defendant does not appeal from his conviction on the indictment
charging him with assault and battery.

[2] At trial, the victim testified that the man also "jammed two to three
fingers into" her vagina.

to arrive at the scene. Hall testified that he saw a man, the defendant, standing about twelve to eighteen inches from an uncurtained window of a basement apartment and that the defendant was peering into the window. His belt was unbuckled, his trousers were unbuttoned and unzipped. He wore no underwear, and his hands were in front of his groin area (the defendant later claimed that he had been urinating). Hall came up from behind the defendant, grabbed him, and turned him over to Santos while he spoke with the woman who had made the suspicious person report.

When Sullivan and Walsh arrived at the scene, just moments after Hall and Santos, Sullivan observed that the man who had been apprehended by Hall was a dark-skinned white male of about 170 pounds, five feet ten inches tall, in his early twenties, and wearing a dark blue jacket.[3] Hall "patted down" the defendant and found a packet of what he believed to be marijuana. The defendant was arrested for possession of marijuana and peeping and spying.[4]

In the meantime, based upon his observations of the defendant as he was being apprehended by Hall and Santos, Sullivan returned to 67 Dana Street to speak with the victim and learn if she would be able to identify her assailant. He picked her up at about 3:00 A.M., and called back to Hall who, with Santos and the defendant, had driven his cruiser to a nursing home parking lot across from 1 Dana Street. Upon learning that Sullivan was returning with the victim, Hall removed the

---

[3] A police booking sheet was marked for identification at the suppression hearing. The description of the defendant appearing on the booking sheet reflects that he is a black male with black hair, five feet, eleven inches tall, was then 160 pounds and twenty-three years of age, and was wearing a dark blue sweat jacket with yellow stripes on the sleeves.

[4] By way of an addendum to the Commonwealth's brief, we are informed that peeping and spying is a violation of Cambridge City Ordinance § 13-7, which provides: "No person other than an officer of the law acting in the performance of his legal duty shall enter upon the premises of any person with the intention of peeping into a dwelling or spying upon any person therein." The defendant filed a motion to strike the addendum, and for reasons to be discussed infra, that motion is allowed.

defendant's handcuffs, and the three men got out of the cruiser and walked about five feet to the rear of the car, where they awaited the victim's arrival.

Sullivan, the victim, and a male companion, pulled up within minutes, got out of the cruiser, and walked towards the defendant. When the victim was about ten to fifteen feet from the defendant, she became upset, backed away, said that he was her assailant, covered her face with her hands, and turned to her companion. The officers pressed her, stating that she had to be one hundred percent certain. The victim responded that she was.

The judge concluded that, when Hall saw the defendant "peering into the window of a house in the early morning hours with his pants open and in disarray," he had probable cause to arrest him. See *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). Because the victim, when attacked, had "ample opportunity to observe her assailant at close quarters with sufficient light and in the familiar surroundings of her own bedroom," and because the confrontation arranged by Sullivan between the victim and the defendant was constitutionally permissible, see *Commonwealth* v. *Coy*, 10 Mass. App. Ct. 367, 371 (1980), the judge further concluded that the victim's identification should be allowed in evidence. See generally *Commonwealth* v. *Howell*, 394 Mass. 654, 659-661 (1985).

II. *The Identification.*

The defendant argues that, although his presence at the rear basement window in the early morning hours was sufficient to justify an investigatory stop of the type authorized under *Terry* v. *Ohio*, 392 U.S. 1 (1968), the police did not have probable cause to arrest him. His arrest, he continues, cannot be predicated upon the discovery of his possession of marijuana because that was found as a result of a search which exceeded permissible limits. See, *id.*, at 22; *Commonwealth* v. *Silva*, 366 Mass. 402, 405-406 (1974). Characterizing his detention as an investigatory one, the defendant concludes that the detention was impermissibly lengthy and, therefore, his identification by the victim illegal. In the alternative, the defendant attacks the identification as unduly suggestive and unreliable.

a. *The defendant's arrest.* We do not accept the defendant's premise that his actions were sufficient to justify only an investigatory stop. The defendant was legally arrested, but in so concluding, we do not rely upon the Cambridge ordinance. The defendant is correct in asserting that the ordinance was not put in evidence and must, therefore, be disregarded. See *Gaunt* v. *Board of Appeals of Methuen,* 327 Mass. 380, 381 (1951); *Lawrence* v. *Falzarano,* 7 Mass. App. Ct. 591, 597-598 (1979), rev'd on other grounds, 380 Mass. 18 (1980). It does not follow, however, that the defendant's arrest must be deemed invalid.

Whether a given set of facts is "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed," *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982), quoting from *Carroll* v. *United States,* 267 U.S. 132, 162 (1925), and *Brinegar* v. *United States,* 338 U.S. 160, 175-176 (1940), does not turn on the label attached to those facts by the arresting officer. As stated in *Ralph* v. *Pepersack,* 335 F.2d 128, 134 (4th Cir. 1964), "To make constitutional questions turn on the term chosen by police officers to describe their activity — officers who are accustomed to the vernacular of the police station and unschooled in the accepted constitutional vocabulary — is to engage in a futile and unwarranted exercise in semantics." Cf. *Commonwealth* v. *Hason,* 387 Mass. at 175; *Commonwealth* v. *Colitz,* 13 Mass. App. Ct. 215, 223-224 (1982). We do not imply or suggest that the police are free to arrest and charge routinely and consider probable cause ex post facto or to expect that we will do so. Our holding is a narrow one: "[W]hen a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest." *Mills* v. *Wainwright,* 415 F.2d 787, 790 (5th Cir. 1969). There the court held that the defendant's arrest for vagrancy where no probable cause existed was illegal as a "sham" or "fraud" even though there may have been probable cause to arrest on a charge of breaking and entering. See also 2 LaFave, Search and Seizure,

A Treatise on the Fourth Amendment § 5.1(e), and cases collected at nn. 136 & 139 (1985 Supp.).

Here the defendant was arrested, irrespective of the official designation of his acts, because he was standing at a rear, uncurtained, apartment window, at an early morning hour, with his trousers open, wearing no underwear, and his hands at his groin. Putting aside and disregarding "peeping and spying," the offense of open and gross lewdness and lascivious behavior is a felony. See G. L. c. 272, .§ 16.[5] The judge correctly concluded that there was probable cause to arrest the defendant.[6]

b. *The victim's confrontation.* The one-on-one confrontation of the defendant by the victim was not impermissibly suggestive. Although disfavored, such confrontations have been held to be permissible where, as here, they occur promptly after the crime. See *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976); *Commonwealth* v. *Coy*, 10 Mass. App. Ct. at 371; *Commonwealth* v. *O'Loughlin*, 17 Mass. App. Ct. 972 (1984). Attempts were made by the police to disguise the fact that the defendant was under arrest, see *Commonwealth* v. *Barnett*, 371 Mass. at 93, and, after the victim's initial identification, the police cautioned her that she must be certain. See *Commonwealth* v. *Coy*, 10 Mass. App. Ct. at 373. We do not see any impermissible suggestion by the police in advising the victim,

---

[5] The defendant argues that at the hearing on the motion to suppress no evidence was adduced to show whether anyone in the apartment, or elsewhere, had observed the defendant's condition. "To convict a defendant of open and gross lewdness and lascivious behavior, the Commonwealth must prove that the conduct is committed in 'such a way as to produce alarm' or shock." *Commonwealth* v. *Fitta*, 391 Mass. 394, 396 (1984), quoting from *Commonwealth* v. *Wardell*, 128 Mass. 52, 53 (1880). However, although probable cause requires more than suspicion, evidence sufficient to warrant a conviction is not necessary. See *Commonwealth* v. *Stevens*, 362 Mass. 24, 27 (1972); *Commonwealth* v. *Hason*, 387 Mass. at 174.

[6] We need not consider the search of the defendant and the seizure of marijuana. Those questions are irrelevant to the validity of the defendant's arrest. See *Commonwealth* v. *Weiss*, 370 Mass. 416, 420-421 (1976). Additionally, an indictment arising out of the defendant's possession of marijuana was placed on file without a change of plea and without objection by the defendant.

when they asked if she would be willing to accompany them, that they had apprehended someone who "closely matched" the description she had given to them earlier. As observed in *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. 574, 583 (1984), "[t]he witness knows [s]he would not be asked to make an identification unless the police had reason to suspect the detainee's involvement."

Even were we to conclude that the confrontation was impermissibly suggestive, we would not disturb the judge's denial of the motion. All the indicia of reliability of the victim's identification were satisfied. See *Manson* v. *Brathwaite*, 432 U.S. 98, 114 (1977). We do not regard the victim's prior identification as mistaken because she failed to point out that the sleeves of her assailant's jacket had yellow stripes or because of some differences between her observations and those made by Sullivan at the time of the defendant's arrest. The descriptions made by the victim and Sullivan even differ somewhat from the information set out in the booking sheet. See note 3, *supra*. These inaccuracies were insufficient to require suppression of the victim's identification, and their significance was a matter properly left to the jury. See *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. 230, 238-239 (1978); *Commonwealth* v. *Hicks*, 17 Mass. App. Ct. at 578-581.

III. *The Jury Instructions.*

The defendant claims that two errors infect the judge's instructions to the jury: (1) that the instructions on the crime of indecent assault and battery were so vague that the jury were free to base a conviction on conduct not contemplated by c. 265, § 13H, see *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 584 (1980); and (2) that the instruction permitted by *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101 (1973), the so-called "dynamite" charge as modified, should not have been given, as the jury had not reached an impasse in their deliberations.

a. *Indecent assault and battery.* The jury were charged on the elements of an indecent assault and battery as a lesser included offense within the indictment charging the defendant

with rape. That portion of the instruction to which the defendant objects[7] reads:

"An indecent assault and battery is essentially an act or series of acts which are fundamentally offensive to contemporary moral values. No particular definition is given by the statute for what constitutes the crime of indecent assault and battery. It has often been said, however, that it is behavior which the common sense of society would regard as immodest, immoral and improper.

"Thus, in order to prove indecent assault and battery, the Commonwealth must therefore prove beyond a reasonable doubt that the defendant committed an intentional unprivileged and indecent touching of the victim."

The defendant constructs the following argument. If "indecent" assault and battery is to have any meaning, it must be construed as involving a "sexual touching." Cf. *Commonwealth* v. *Burke*, 390 Mass. 480, 483 (1983). The jury were not so told (but see *infra*), and their acquittal of the defendant of the charge of rape "indicates the jury found that he had not committed the only battery testified to that had sexual aspects." Consequently, the conviction for indecent assault and battery could be based erroneously upon the evidence that the victim was attired in her nightclothes when punched by the defendant.

In the course of their deliberations, the jury asked the judge several questions,[8] all of which indicate that they had focused upon the victim's testimony that the defendant had inserted

---

[7] This instruction, because of questions by the jury during their deliberations, was given three times. Each time the defendant lodged an objection couched in terms of the unconstitutional vagueness of § 13H, a claim related to but somewhat different from that now argued. The Commonwealth does not argue that the defendant did not take a proper objection for the argument now being made, and we will construe the defendant's objection based on "vagueness" in the broad sense. Therefore, we do not hold the defendant to the more strict standard of review. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Matos*, 394 Mass. 563, 565 (1985).

[8] "Does the state have the obligation to prove that the defendant intended

his fingers into her vagina. In responding to the jury's third question, the judge reread her original instruction on indecent assault and battery, adding that the "mere touching of the private parts of a person" has been held to be an indecent assault and battery. The jury found the defendant guilty of assault and battery as well as indecent assault and battery.

We will not attempt to analyze the jury's reasoning in reaching their verdicts. The sole question before us is whether they were correctly instructed. There is no error in the judge's statement of the law, and a limit to the type of conduct which could be found to be "indecent" was furnished by the evidence of the defendant's "particular acts," *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. at 584, which the record amply demonstrates to be the basis of his conviction.

b. *Coercion.* On March 23, 1984, the court convened at 9:30 A.M. After a lobby conference, the judge instructed the jury. In the course of the day, the jury sent several questions to the judge. Deliberations ended at 8:10 P.M., to be resumed the next day at 9:30 A.M.

In the course of their deliberations the next morning, the jurors sent their final question to the judge. See note 7, *supra.* The judge concluded that "they are splitting hairs" and that the questions demonstrated that "they are at an impasse." She answered the question and then gave a supplementary charge in accordance with *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851), as modified by *Commonwealth* v. *Rodriquez*, 364 Mass. at 101-102. The jury returned with their verdicts at about 11:40 A.M.

For substantially the same reasons as those set out in paragraph 1(a) of *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1005-1006 (1982), we see no abuse of discretion.

*Judgments affirmed.*

to insert his fingers in order for the conviction of rape to be satisfied"?

"Does rape entail anything more than lack of consent and penetration?"

"For the elements of indecent assault and battery to be satisfied, does the state need to prove that the intent of the assault was indecent; or is a finding on our part that the assault was intended and the assault is indecent sufficient?"