USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1264

 SASAN MAGHSOUDI,

 Petitioner, Appellant,

 v.

 IMMIGRATION AND NATURALIZATION SERVICE,

 Respondent, Appellee.

 APPEAL FROM A DECISION OF THE

 BOARD OF IMMIGRATION APPEALS

 Before

 Stahl, Circuit Judge,
 
 Magill, Senior Circuit Judge,
 
 and Lipez, Circuit Judge.
 
 
 
 
 Gary Silbiger, with whom Silbiger & Honig was on brief for
appellant.
 Brenda M. O'Malley, with whom Karen Ann Hunold, Senior
Litigation Counsel, Frank W. Hunger, Assistant Attorney General,
and the Office of Immigration Litigation, Department of Justice,
were on brief for appellee.

June 10, 1999

 LIPEZ, Circuit Judge. Sasan Maghsoudi, an alien, seeks
direct judicial review of a final order of deportation from the
Board of Immigration Appeals (BIA). The BIA found Maghsoudi
deportable (under 8 U.S.C. 1227(a)(2)(A)(ii)) because it held
that he had two prior convictions for crimes involving moral
turpitude. If both crimes were indeed crimes of moral turpitude, we
lack jurisdiction to review the deportation order. Finding that
Maghsoudi had been convicted of two such crimes, we conclude that
we lack jurisdiction over his appeal.
I. Background
 Maghsoudi came to the United States from Iran as a high
school student on February 5, 1978, and remained in this country
after the Islamic Revolution. His relevant criminal history for
purposes of this case consists of a 1985 Massachusetts conviction
for assault and robbery (stemming from a fare dispute with a
passenger in his taxi on May 22, 1983, and resulting in a ten year
suspended sentence), and a 1989 Massachusetts conviction for
indecent assault and battery (stemming from his relationship with
a sixteen year old girl, and resulting in a two and one half year
suspended sentence). An immigration judge (IJ) found him
deportable on the ground that both convictions involved moral
turpitude (pursuant to Immigration and Nationality Act (INA)
 241(a)(4)) but granted discretionary relief from deportation
(pursuant to INA 212(c)) on the ground that specific factual
circumstances of the two convictions were mitigating. The INS
noticed and briefed an appeal to the BIA on the ground that
granting relief in these circumstances was an abuse of discretion
by the IJ. For reasons unexplained, the INS's appeal to the BIA
remained pending for six years. In the interim, the Antiterrorism
and Effective Death Penalty Act of 1996 (AEDPA) was passed, and
the Attorney General issued her opinion in Matter of Soriano,
Interim Decision 3289 (A.G. Feb. 2, 1997), ruling that the AEDPA
retroactively barred relief to any alien deportable for having
committed any of the offenses listed in 212(c). The BIA
subsequently reversed the IJ's grant of 212(c) relief to
Maghsoudi on the sole ground that AEDPA 440(d) made those
convicted of "two crimes of moral turpitude" ineligible
(retroactively) for 212(c) relief. See In re Sasan Maghsoudi,
Order, A 24-581-482 (BIA March 25, 1997).
 On appeal, Maghsoudi contends that the BIA erred in
holding that the AEDPA retroactively barred eligibility for
 212(c) relief, citing Goncalves v. Reno, 144 F.3d 110, 133 (1st
Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999). However,
Maghsoudi must first establish our appellate jurisdiction before we
can reach the merits of that issue on direct appeal. Under
 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 (IIRIRA), we have no jurisdiction to
hear a direct appeal from a decision of the BIA in the case of an
alien who is deportable by reason of having committed two crimes
involving moral turpitude, where each conviction resulted in a
sentence to confinement for one year or longer. On appeal,
Maghsoudi claims that his indecent assault conviction was not in
fact a conviction of a crime involving moral turpitude, and thus
the jurisdictional provisions of IIRIRA 309(c)(4)(G) eliminating
resort to the Courts of Appeals do not apply to the current appeal.
II. Analysis
 The INS claims that Maghsoudi conceded that his indecent
assault conviction was a conviction involving moral turpitude
before the IJ, and therefore should be held to have waived the
issue for purposes of this appeal. Maghsoudi, acting pro se,
initially contested his deportability in preliminary proceedings
before the IJ and essentially protested his innocence of the crimes
notwithstanding his guilty pleas. See C.R. 108-09. However, the
oral decision of the IJ states:
 Respondent [Maghsoudi], through his attorney,
 conceded the truthfulness of the allegation of
 fact contained in the Order to Show Cause and
 conceded that he was subject to deportation on
 the charge contained therein. Based on the
 foregoing and what is contained in the record,
 I find that the respondent is subject to
 deportation on the charge contained in his
 Order to Show Cause by evidence which is
 clear, convincing, and unequivocal.

In the Matter of Maghsoudi, No. A24-581-482 (Feb. 13, 1991), at 2
(emphasis added). The charge contained in the order to show cause
read as follows:
 [O]n the basis of the foregoing allegations,
 it is charged that you are subject to
 deportation pursuant to the following
 provisions of law:

 Section 241(a)(4) of the Immigration and
 Nationality Act, in that you at any time after
 entry have been convicted of two crimes
 involving moral turpitude not arising out of a
 single scheme of criminal misconduct.

Order to Show Cause, C.R. 536, 538. Maghsoudi's current counsel
claims in his brief on appeal that Maghsoudi's counsel in the
proceedings before the IJ "never admitted the allegations or charge
of deportability." Given the significance of the concession of
deportability, the dispute over whether such a concession was made
by Maghsoudi's counsel in proceedings before the IJ, our
discretionary power to resolve issues arguably waived below, see
Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993);
Singleton v. Wulff, 428 U.S. 106, 121 (1976), and our jurisdiction
to resolve jurisdictional facts to determine whether IIRIRA
 309(c)(4)(G) applies to preclude appellate jurisdiction in this
case, we shall resolve the issue of whether Maghsoudi's indecent
assault conviction was for a crime of moral turpitude.
 There is some uncertainty as to the exact statutory basis
of Maghsoudi's 1989 "indecent assault" conviction. Maghsoudi was
initially charged under Mass. Gen. Laws ch. 265, 13F, "Indecent
assault and battery on mentally retarded person." The docket
reflects a conviction of "INDECENT A&B RETARDED PERSON C265 S13F"
with the word "RETARDED" crossed out by hand. See C.R. 505. We
assume that a conviction under ch. 265, 13H, "Indecent assault
and battery on person fourteen or older," was thereby intended,
and that the retention of the citation "S13F" is a mere clerical
error. Maghsoudi's sentence (two and one half years in a house of
correction, suspended) was consistent with the maximum allowable
under 13H. He was further sentenced to undergo sexual offender
evaluation and treatment, which is inconsistent with his assertion
that his conviction was for simple assault and battery (presumably
under 13A). (The INS describes Maghsoudi's conviction as one for
"indecent assault" under ch. 265, without specifying a section,
which is at least consistent with our interpretation. See C.R.
538.)
 In making our de novo determination of whether or not a
crime involves "moral turpitude" within the terms of 8 U.S.C.
 1227(a)(2)(A)(ii), we accord due deference to the BIA's
interpretation of that statute. See Cabral v. INS, 15 F.3d 193, 194
(1st Cir. 1994). Since clear indications of congressional intent
from the language of the immigration statute or the legislative
history are absent, see id. at 194-95, BIA interpretations are
"entitled to deference unless arbitrary, capricious, or manifestly
contrary to the statute." Id. at 194. The inherent nature of the
crime of conviction, as defined in the criminal statute, is
relevant in this determination; the particular circumstances of
Maghsoudi's acts and convictions are not. See Pichardo v. INS, 104
F.3d 756, 759 (5th Cir. 1997). We may, however, refer to the record
of conviction, meaning the charge (indictment), plea, verdict, and
sentence, in ascertaining exactly the criminal conduct to which
Maghsoudi pled guilty. See Cabral, 15 F.3d at 195; Pichardo, 104
F.3d at 759.
 The general definition of "moral turpitude" has been
summarized by the BIA as follows:
 Moral turpitude refers generally to conduct
 that shocks the public conscience as being
 inherently base, vile, or depraved, and
 contrary to the accepted rules of morality and
 the duties owed between persons or to society
 in general. Moral turpitude has been defined
 as an act which is per se morally
 reprehensible and intrinsically wrong or malum
 in se, so it is the nature of the act itself
 and not the statutory prohibition of it which
 renders a crime one of moral turpitude. Among
 the tests to determine if a crime involves
 moral turpitude is whether the act is
 accompanied by a vicious motive or a corrupt
 mind.
Hamdan v. INS, 98 F.3d 183, 186 (5th Cir. 1996) (citations omitted)
(quoting In re Hamdan, at 4 (BIA Jan. 5, 1995)).
 Under the Massachusetts statute, indecent assault refers
to acts "fundamentally offensive to contemporary moral values" and
"there is no particular definition given for what constitutes the
crime." Commonwealth v. Perretti, 477 N.E.2d 1061, 1066 (Mass.
1985) (quoting approved jury instructions). "A touching is indecent
[within the meaning of 13H] when, judged by the normative
standard of societal mores, it is violative of social and
behavioral expectations, in a manner which is fundamentally
offensive to contemporary moral values and which the common sense
of society would regard as immodest, immoral, and improper."
Commonwealth v. Lavigne, 676 N.E.2d 1170, 1172 (Mass. App. Ct.
1997) (citations, alterations and internal quotation marks
omitted). Lack of consent was an element of indecent assault on a
person fourteen or older at the time of Maghsoudi's 1989
conviction. See Commonwealth v. Burke, 457 N.E.2d 622, 624, 625 n.4
(Mass. 1983) (lack of consent an element of nonharmful battery),
partially abrogated by 1986 Mass. Acts ch. 187 (declaring child
under fourteen incapable of giving consent, for purposes of Mass.
Gen. Laws ch. 265, 13B, "Indecent assault and battery on child
under fourteen"); Commonwealth v. Rowe, 465 N.E.2d 1220, 1221
(Mass. App. Ct. 1984) (after Burke, lack of consent clearly an
element of 13H conviction); see also Commonwealth v. Conefrey,
640 N.E.2d 116, 122 n.10 (Mass. App. Ct. 1994) ("Nonconsent is only
an element of indecent assault and battery for victims over
fourteen."), overruled on other grounds, 650 N.E.2d 1268 (Mass.
1995). Maghsoudi's sentence (part of the record of conviction)
included sexual offender evaluation and treatment.
 Based on the foregoing, we have no difficulty in
concluding that Maghsoudi's Massachusetts indecent assault
conviction meets the BIA's general standard for a crime involving
moral turpitude (as expressed in Hamdan, above). Our conclusion is
also consistent with past BIA decisions. In Matter of S-, 5 I. & N.
Dec. 686 (BIA 1954), the BIA held that a conviction under the
Canadian "indecent assault" statute was a crime of moral turpitude.
That statute defined the crime as gaining intimacy through
fraudulent consent or without consent at all. See id. at 687. In
Matter of Z-, 7 I. & N. Dec. 253 (BIA 1956), the BIA held that
"indecent assault" under the Connecticut code, 6052 (the statute
involving indecent touching regardless of consent, see id. at 255
(citing State v. Chicorelli, 30 A.2d 544, 544-45 (Conn. 1943))), 
was a crime of moral turpitude. Given that lack of consent was an
element of the crime to which Maghsoudi pleaded guilty, a
determination that the crime involved moral turpitude is consistent
with earlier BIA determinations.
III. Conclusion
 Because we conclude that both of Maghsoudi's convictions
were for crimes involving moral turpitude, and because both
convictions resulted in a sentence to confinement of one year or
greater, we lack jurisdiction over this appeal under IIRIRA
 309(c)(4)(G). Any challenge to the merits of the BIA
determination regarding the retroactive applicability of AEDPA
 440(d) to Maghsoudi's case must be brought via collateral attack
in the district court. See Goncalves, 144 F.3d at 133.

 This appeal is dismissed for lack of jurisdiction.