## Commonwealth *vs.* Larry H. Sherman, Jr.

No. 05-P-1409.

Bristol. September 11, 2006. - May 1, 2007.

Present: Grasso, Cowin, & Trainor, JJ.

Further appellate review granted, 449 Mass. 1107 (2007).

*Practice, Criminal,* Plea. *Evidence,* Guilty plea. *Rape.*

Discussion of the necessity of including an affidavit with a motion for a new trial attacking a conviction based upon a guilty plea where the motion relies solely on the contemporaneous record of the guilty plea proceeding. [799-800]

A Superior Court judge erred in allowing the criminal defendant's motion for a new trial, where the prosecutor's factual recitation at a plea colloquy and the defendant's acknowledgment that he committed the acts recounted therein were sufficient to constitute an admission to the unexplained elements and established that the defendant's plea to rape was intelligently made, and a more detailed recitation of what constituted rape in legal terms, or of the particulars of the defendant's acts, was not required. [800-804] Trainor, J., dissenting.

Indictments found and returned in the Superior Court Department on January 14, 1993.

A motion for a new trial, filed on April 14, 2003, was heard by *David A. McLaughlin,* J.

*Tara Blackman,* Assistant District Attorney, for the Commonwealth.

*David J. Barend* for the defendant.

Grasso, J. On appeal from an order allowing a motion for a new trial, the Commonwealth contends that a Superior Court judge erred in concluding that the defendant's guilty plea was not intelligent. We agree and reverse the order allowing the new trial motion.

1. *Background.* Indicted for aggravated rape and assault with intent to murder, the defendant, Larry H. Sherman, Jr., pleaded guilty in 1993 to the lesser offenses of rape and assault. After

colloquy, a judge accepted the jointly recommended disposition and imposed, for the rape, a sentence of six to ten years in prison, with six months to be served and the balance of the sentence suspended for a three-year probationary period.[1] Credit for time held in confinement awaiting trial resulted in the defendant's immediate release at the time of the plea.

In October, 1999, a second judge found the defendant in violation of his probation, revoked his probation, and ordered the defendant to serve the balance of his suspended sentence.[2] In April, 2003, the defendant moved for a new trial and to withdraw his guilty plea, asserting that his plea was not intelligent and voluntary because (1) "the record reveals that he never admitted to facts sufficient to establish the elements of the crime of rape"; and (2) "the judge failed to inquire . . . whether he pled guilty due to duress or coercion." Accompanying the motion was an affidavit of the defendant that supported the claim of coercion.[3] The defendant alleged that his former attorney never visited him, failed to ask his version of events, and failed to prepare for trial. He also maintained that she "coerced and pressured [him] into pleading guilty" by claiming that the district attorney threatened to add a charge of kidnapping if he went to trial, by asserting that he would get a life sentence if found guilty, by falsely claiming that his chance of prevailing at trial was poor, and by failing to divulge that the alleged victim was not going to testify.

In opposition, the Commonwealth obtained an affidavit from the defendant's trial attorney that directly contradicted the defendant's claims of unpreparedness and coercion. Her affidavit detailed her efforts on behalf of the defendant. She engaged in a probable cause hearing in District Court; obtained

---

[1]Because the offense occurred prior to the Truth in Sentencing Act, St. 1993, c. 432, the judge could permissibly impose a split sentence to State prison. The indictment charging assault was placed on file with the defendant's consent.

[2]Apart from his attack on the validity of the underlying guilty plea, the defendant does not challenge the finding of violation and revocation of his probation.

[3]The defendant's affidavit addressed only the claim of coercion. His affidavit did not assert that he did not commit the acts alleged by the prosecutor. Nor did it assert that he did not know what "rape" was or that he lacked understanding as to the nature of the charge or the consequences of his plea.

a transcription of that proceeding; spoke to witnesses recommended by the defendant; provided the defendant with police reports, investigative reports, and grand jury minutes; and spoke with the defendant at length. Her discussions with the defendant covered relevant particulars, including the victim's background as a prostitute and drug addict, the victim's availability for trial and impeachability, the physical and fresh complaint evidence, the Commonwealth's offer of a split sentence with credit for time served, and the risks and benefits of proceeding to trial.

Defense counsel's affidavit related that the defendant was held on bail throughout the case and wished to be released from custody as quickly as possible. He decided to accept the Commonwealth's plea offer because he wanted to be released. On the day the defendant pleaded guilty, he did so with knowledge that the victim had not appeared.

2. *The new trial motion.* The hearing on the defendant's motion for new trial addressed both the intelligence and the voluntariness of the plea. In a subsequent written decision, the motion judge (who was not the plea judge) rejected the defendant's claim that coercion and duress rendered the plea involuntary. The motion judge concluded, however, that the record of the guilty plea colloquy did not establish that the defendant's plea was intelligent. He allowed the defendant's motion on that ground and ordered a new trial.

The motion judge erred. The Commonwealth's factual presentation at the guilty plea hearing, and the defendant's acknowledgment that he committed the acts alleged, constituted the requisite admission "to facts constituting the unexplained element" to render the plea intelligent. *Commonwealth* v. *Mc-Guirk*, 376 Mass. 338, 344 (1978), cert. denied, 439 U.S. 1120 (1979). *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997).

a. *Raising the issue of the intelligence and voluntariness of a guilty plea.* Under the terms of Mass.R.Crim.P. 30(c)(2) and (3), as appearing in 435 Mass. 1501 (2001), a motion for a new trial must specify the grounds for the relief claimed, and as the moving party, the defendant must, where appropriate, accompany the motion with an affidavit or affidavits in support of his

position. Whether an affidavit must accompany a new trial motion that relies solely on the contemporaneous record of the guilty plea proceeding has not been explicitly decided previously. We conclude that the rule does not impose such a requirement.

Ordinarily, if the defendant wishes to present evidence in support of the grounds raised in his motion for new trial, he must submit an affidavit to support his contention. See *Commonwealth* v. *DeMarco*, 387 Mass. 481, 485 n.10 (1982); *Commonwealth* v. *Saarela*, 15 Mass. App. Ct. 403, 407 (1983). However, "[a]s explained in *Commonwealth* v. *Foster*, 368 Mass. 100, 108 nn.6 & 7 (1975), a defendant attacking a conviction based upon a guilty plea has a choice between two tactics. He may stand on the contemporaneous record, the record made in the case through the stage of the colloquy and conviction. If the defendant chooses this route, it is not open to the Commonwealth to introduce extraneous evidence tending to show that the defendant in fact acted freely and intelligently in tendering the plea. . . . Alternatively, the defendant may offer extraneous evidence to supplement (or contradict) the record, but in that event the Commonwealth has a like right to offer evidence." *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 492 (1985) (citation omitted). "When a defendant has received a constitutionally inadequate plea colloquy, he is entitled to withdraw that plea." *Commonwealth* v. *Colon*, 439 Mass. 519, 529 (2003). See *Commonwealth* v. *Foster*, 368 Mass. at 102. Consequently, a defendant who challenges the intelligence or voluntariness of his plea and relies solely on the contemporaneous record of the proceeding for that challenge need do no more than file with his motion a copy of the record of the plea proceeding being challenged. The record will then establish the constitutional adequacy or inadequacy of the colloquy.

b. *Intelligence of the plea.* Here, the defendant's challenge to the intelligence of his plea rested solely on the contemporaneous record of the plea proceeding.[4] In such circumstances, the question is wholly a matter of law. We consider, then, the cor-

---

[4]In contrast, the defendant's voluntariness challenge introduced extraneous evidence, his affidavit, to establish coercion.

rectness of the motion judge's determination that the defendant's guilty plea was not intelligent.[5]

The intelligence of the defendant's plea hinges entirely on the third basis for intelligence: the defendant's admission to facts recited during the colloquy. See *Commonwealth* v. *Correa,* 43 Mass. App. Ct. at 717 (intelligence requirement can be satisfied by judge explaining elements of crime to defendant; counsel's representation that he has explained to defendant elements he admits by his plea; or defendant's stated admission to facts that constitute unexplained elements). The colloquy does not contain an explanation by the plea judge of the elements of rape or a representation by the defendant's attorney that she explained to the defendant the elements he admitted by his plea. Thus, we turn to the prosecutor's factual recitation and the defendant's acknowledgment.

The prosecutor stated,

> "On or about October 27th of last year, 1992, at 3:40 A.M., two Fairhaven police officers responded to the Riverside Cemetery, having received calls from residents in the area with respect to screaming emanating from the cemetery. Upon arrival at the cemetery, they observed a young woman later identified as [the victim] running from the cemetery area. She was naked from the waist down and had an article of clothing, a yellow T-Shirt, tied around her neck.

---

[5]The defendant does not challenge the denial of his motion insofar as it claimed lack of voluntariness due to coercion or duress. In any event, we discern no error. The motion judge found the assertions of the defendant's affidavit not credible. These assertions directly contradicted his responses to the plea judge's questions made while under oath. See *Commonwealth* v. *Hiskin, ante* 633, 634 (2007) (defendant's sworn statements at colloquy have special significance when in contradiction of later averments). The defendant's assertions were contradicted, as well, by his trial attorney's affidavit, and were not supported by affidavits of other witnesses or other objective indicia.

There is also no merit to the claim that coercion arose from the plea judge's failure to pose a direct question to the defendant inquiring whether his plea was coerced. The plea judge did ask, "Has anyone induced you to plead guilty by way or promises or offers of any kind?" See *Commonwealth* v. *Nolan,* 19 Mass. App. Ct. at 502 (no formula should be followed mechanically, as it would interfere with probing exchange). "No particular form of words need be used in the required inquiry of a defendant." *Commonwealth* v. *Quinones,* 414 Mass. 423, 434 (1993).

> "Based on information received from the victim and further investigation, specifically information received with regard to a vehicle that [the victim] had gone to the cemetery in, the defendant was located, and clothing that he was wearing was consistent with that described by the victim . . . . She subsequently identified him as the person who picked her up on the morning of October 27th. He took her to the cemetery and forcibly raped her when she declined to have sex with him voluntarily in exchange for United States currency."

After this factual recitation, the plea judge asked the defendant, "Is that true?" and the defendant responded, "Yes."

Here, the prosecutor's factual recitation and the defendant's acknowledgment that he committed the acts detailed therein were sufficient to constitute an admission to the "unexplained elements" and establish that the defendant's plea to rape was intelligent. See *Commonwealth* v. *Colantoni*, 396 Mass. 672, 678-679 (1986); *Commonwealth* v. *Bowler*, 60 Mass. App. Ct. 209, 210-211 (2003). The rape statute follows the common-law definition of rape and requires the Commonwealth to prove that the defendant (1) had sexual intercourse, (2) by force or threat of force against the will of the victim. *Commonwealth* v. *Lopez*, 433 Mass. 722, 726-727 (2001). By any reasonable measure, the defendant's admission that he raped the victim when she refused to have sex with him voluntarily establishes this proof.

We find unpersuasive the contention that without a more detailed recitation of what constitutes rape in legal terms, or of the particulars of the defendant's acts, his admission to the prosecutor's factual recitation was insufficient and renders his plea unintelligent. Such an argument rests on the strained premise that the prosecutor's recitation that the defendant "forcibly raped" the victim, without further explication of details, is an inadequate basis to establish the defendant's admission to the unexplained elements of the crime because the defendant may have mistakenly pleaded guilty to rape when he only performed acts that could not amount to rape in a legal sense, such as touching the victim on the breast.[6]

---

[6]As noted, the defendant's affidavit makes no such claim.

We reject such a hypertechnical parsing as it ignores both the context of the defendant's plea and the lay understanding of "rape." The defendant's plea was part of a proceeding in which he pleaded guilty to a crime both defined by statute[7] and set forth in the numbered indictment, to which the defendant pleaded guilty, as "sexual intercourse or unnatural sexual intercourse with [the victim] . . . by force and against her will." At the time of his plea, the defendant was twenty-five years old, with an eleventh grade education, and there is no suggestion that he lacked competence. See *Commonwealth* v. *Robbins*, 431 Mass. 442, 445 (2000) (test of competence to plead guilty similar to that for standing trial); *Commonwealth* v. *Conaghan*, 433 Mass. 105, 110 (2000). Rape is a term commonly understood by lay persons. The term has long been part of common parlance, and of the common law, descriptive of involuntary sexual intercourse. The lay meaning of "rape" is well understood as encompassing, at the very least, unconsented-to natural sexual intercourse, "the penetration of the female sex organ by the male sex organ with or without emission." *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977). See *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 583 (1980). Indeed, in common understanding and practice, the term is well understood to encompass unnatural sexual intercourse as well. See *Commonwealth* v. *Gallant, supra* at 589-590.

The defendant's admission that he "forcibly raped" the victim clearly constitutes an acknowledgment that he had forcible sexual intercourse with the victim, who was "naked from the waist down," when she refused to have sex with him voluntarily in exchange for money. That the defendant may not have been aware of all possible legal permutations of rape is irrelevant. So too is the failure of the prosecutor to describe in minute detail the defendant's forcible penetration of the victim. In the context of his guilty plea, the defendant's admission that he forcibly raped the victim when she would not voluntarily

[7]General Laws c. 265, § 22(*b*), as appearing in St. 1980, c. 459, § 6, provides, in pertinent part: "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury . . . shall be punished . . . ."

have sex with him for money was self-explanatory. See *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. 722, 723 (1997) (left unadorned, term is not vague or ambiguous); *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. 93, 97 (2000) (in prosecution for trafficking cocaine, use of term "marketing" tended to make charge "self-explanatory"). Contrast *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000) (no admission to facts where prosecutor's recitation was made outside presence of defendant); *Commonwealth* v. *Jones*, 60 Mass. App. Ct. 88, 91 (2003) (no facts recited by prosecutor or admitted by defendant).

After the plea judge accepted the defendant's plea and imposed sentence, in the defendant's presence the prosecutor offered additional facts to explain the Commonwealth's favorable plea bargain offer to the defendant.[8] Because the prosecutor's initial factual recitation and the defendant's admission alone provided a sufficient factual basis to render the defendant's plea intelligent, we need not address whether the subsequent recitation also formed part of the contemporaneous record that could be relied upon to establish the intelligent nature of the defendant's guilty plea. See *Huot* v. *Commonwealth*, 363 Mass. 91 (1973); *Commonwealth* v. *Quinones*, 414 Mass. 423, 432 (1993) ("contemporaneous record" includes not only proceedings on acceptance of plea, but record of trial preceding plea); *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 492 (contemporaneous record includes record through stage of colloquy and conviction).[9]

There is no merit to the defendant's contention that a new trial is warranted because the plea judge erroneously advised the defendant of the maximum sentence for aggravated rape (life in prison) rather than that for the lesser included offense of rape to which the defendant was pleading guilty (twenty years

---

[8]In summary, the prosecutor related that at the time of the offense, the victim was working as a prostitute. Despite substantial efforts to locate her, the Commonwealth had been unable to do so in part because she is a heroin addict and unstable as a result. She had been convicted in the past for various offenses that could have been used to impeach her credibility at trial, and was at that time subject to prosecution in Bristol County.

[9]Likewise, this recitation refutes the defendant's claim of attorney coercion by establishing on the record of the proceeding that the defendant went forward with his plea knowing that the victim had not appeared.

in State prison). See Mass.R.Crim.P. 12(c)(3)(B), 378 Mass. 868 (1979) (requiring judge to advise defendant, "where appropriate, of the maximum possible sentence . . . and of the mandatory minimum sentence, if any"). "A slip in the protocol prescribed by rule 12 does not entitle a defendant to withdraw a guilty plea if it 'did not significantly affect the substance of the particular requirement' " (footnote omitted). *Commonwealth* v. *Glines*, 40 Mass. App. Ct. 95, 99 (1996), quoting from *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 496. See *Commonwealth* v. *Clerico*, 35 Mass. App. Ct. 407, 413 (1993). In these circumstances, such a misstatement is not the type that warrants the determination that justice was not done and that a new trial is warranted. Indeed, the favorable sentencing consequences of the defendant's plea bargain render insignificant any deviation. See *Commonwealth* v. *Hiskin, ante* 633, 642 (2007).

The order allowing the defendant's motion for new trial is reversed, and a new order shall enter denying the defendant's motion.

*So ordered.*

TRAINOR, J. (dissenting). I respectfully dissent for two reasons.

First, because a motion for a new trial is the appropriate avenue for attacking the validity of a guilty plea, it is a matter for the "sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the [proceeding] was infected with prejudicial constitutional error." *Commonwealth* v. *Colon*, 439 Mass. 519, 524 (2003), quoting from *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995). It is inappropriate for a reviewing court to substitute its own judgment for that of the motion judge when the decision of the motion judge, as it is here, is neither manifestly unjust nor infected with prejudicial constitutional error.

Second, I agree with the motion judge that the prosecutor's recitation of the facts failed to include all of the elements of the offense of rape, and, therefore, the defendant did not intelligently make his plea as he did not have knowledge of the elements of the charge against him. See Mass.R.Crim.P. 12(c)(5)(A), 378

Mass. 869 (1979). The defendant must receive "real notice of the true nature" of the charge to which he intends to plead guilty. *Commonwealth* v. *Sullivan*, 385 Mass. 497, 509 (1982). This requirement is satisfied when the record shows (1) that the judge explained "to the defendant the elements of the crime; [or] (2) by counsel's representation that she has explained to the defendant the elements he admits by his plea; or, (3) by the defendant's stated admission to facts recited during the colloquy which constitute the unexplained elements." *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997). These requirements should occur generally contemporaneously to the plea hearing.

Here, the transcript of the colloquy evidences that neither the plea judge nor counsel explained to the defendant the elements of the charge to which he admitted by his plea.[1] The court proposes that the third prong of the test for an intelligent plea is satisfied because the defendant can be presumed to have understood the elements of rape through the prosecutor's recitation of the following facts: "Upon arrival at the cemetery, [the police officers] observed a young woman later identified as [the alleged victim] running from the cemetery area. She was naked from the waist down and had an article of clothing, a yellow T-shirt, tied around her neck. . . . She subsequently identified [the defendant] as the person who picked her up on the morning of October 27th. He took her to the cemetery and forcibly raped her when she declined to have sex with him voluntarily in exchange for United States currency."[2]

The Commonwealth argues that the commonly accepted lay

---

[1]At the time of the plea hearing, the defendant had been incarcerated since the day of his arrest, and his primary concern was being released from jail. The affidavits of the defendant and his defense attorney contradict whether the defendant was aware that the victim was not present for the hearing. At the same time, the prosecution was aware of its "sporadic contact" with the victim and the victim's history of heroin addiction, prostitution, prior convictions that could be used to impeach her credibility at trial, and pending prosecutions. Her cooperation at any future proceedings, from the prosecutor's perspective, was certainly in doubt. This "perfect storm" of mutual interests resulted in the defendant tendering a guilty plea and being released from jail that same day.

[2]The court seems to imply that the indictment was read at the plea hearing. The reading of the indictment occurred four months earlier at the arraignment. The transcript of the plea hearing does not indicate that the admittedly descriptive nature of the indictment was read at that time.

person's definition of "rape" is forced penile-vaginal penetration. The defendant, then a twenty-five year old man with an eleventh grade education, presumably knew and understood this definition to the exclusion of all other possible definitions. The court apparently adopts this argument when it states that "[t]he rape statute follows the common-law definition of rape and requires the Commonwealth to prove that the defendant (1) had sexual intercourse, (2) by force or threat of force against the will of the victim." *Ante* at 802. The court believes that this common-law definition of "rape" is well understood by the average lay person, and also believes that the definition of unnatural sexual intercourse is equally well understood by the average lay person. The defendant therefore, according to the court, admitted that he raped (presumably by penile-vaginal penetration) the victim when she declined to have sex (again, presumably by penile-vaginal penetration) with him voluntarily in exchange for a fee.

The problem is that the record is devoid of any indication that the Commonwealth was alleging penile-vaginal penetration during either the alleged rape or the sex for a fee. This line of reasoning is pure conjecture with no basis in the record before us, and the circumstances of this case do not lend themselves comfortably to this degree of speculation. A potential client transported a prostitute to a cemetery in the early morning hours, and for some reason that we are not aware of, the business negotiation went sour. We do not know how or when the victim's clothes were removed, nor do we have any idea what transpired before the victim ran out of the cemetery. All we have for the purposes of the defendant's plea is the prosecutor's representation that the victim was "forcibly raped."

Massachusetts law has defined "rape" as encompassing much more than the lay person's definition of forced penile-vaginal penetration. The applicable statute defines rape as "sexual intercourse or unnatural sexual intercourse with a person, and compel[ling] such person to submit by force and against his will, or compel[ling] such person to submit by threat of bodily injury . . . ." G. L. c. 265, § 22, as appearing in St. 1980, c. 459, § 6. The Supreme Judicial Court has interpreted the statutory language to include not only the common-law notion of rape but also the "penetration of the female sex organ by the

male sex organ, with or without emission," as well as "unnatural sexual intercourse" to include "oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977).

In *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579, 583 (1980), this court determined that a jury's "normal common sense view of rape" was not sufficient to cure an erroneous instruction on the elements of rape. The court further observed that "it can be concluded that, in general, acts which do not involve penetration of a genital or anal opening or penetration by a sexual organ, however distasteful and frightening to an unwilling partner, do not fall within the meaning of rape." *Id.* at 584. The court determined that, on the facts of that case, the erroneous instructions could only be limited and potentially cured by the jury hearing detailed evidence of the defendant's particular acts. *Id.* at 584-585. Relying on *Brattman*, the motion judge in the present case accurately determined that the defendant had not made an intelligent plea.

Further, this court has consistently rejected the concept of a lay person's understanding of the elements of a crime. We have credited a defendant with an understanding of an element of a crime when that element has been made "self-explanatory." *Commonwealth* v. *Wiswall*, 43 Mass. App. Ct. 722, 723 (1997). *Commonwealth* v. *DeCologero*, 49 Mass. App. Ct. 93, 97 (2000). We have not, however, considered an element of a crime to be self-explanatory based upon a lay person's general understanding. See *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000) (vacating "possession of cocaine with intent to distribute" conviction because charge was not "self-explanatory" in that neither judge nor counsel explained elements of charge, and no narrative constituting elements of crime was read to defendant to which he could have admitted); *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 203-205 (2000) (holding recitation of facts ambiguous and insufficient to inform defendant of elements of "possession of Class B controlled substance with intent to distribute"); *Commonwealth* v. *Jones*, 60 Mass. App. Ct. 88, 91-92 (2003). For instance, in *Com-*

*monwealth* v. *Jones, supra,* we held that neither "assault and battery" nor "intimidation of a witness" are self-explanatory. A defendant cannot be "presumed to understand their elements simply by virtue of their designation. While the phrase 'assault and battery' may have entered common parlance, this does not mean that the specific elements of the offense are readily apparent from the phrase itself. This is even more the case with respect to 'intimidation of a witness.' " *Id.* at 91. Further, in *Commonwealth* v. *Barry,* 51 Mass. App. Ct. 9 (2001), where the defendant heard and agreed to the names of the charges and then stipulated to unstated facts, this court held, analogizing the "vice" to that in *Commonwealth* v. *Correa, supra,* that "the judge 'failed to ascertain that [the defendant] had knowledge of the elements of the charges against him . . . . Nothing more need be shown to establish the inadequacy of the colloquy for constitutional purposes.' " *Commonwealth* v. *Barry, supra* at 10-11, quoting from *Commonwealth* v. *Correa,* 43 Mass. App. Ct. at 719. See *Commonwealth* v. *Hilaire,* 51 Mass. App. Ct. 818, 826 (2001) (Brown, J., concurring), *S.C.,* 437 Mass. 809 (2002) ("the simple, unadorned stating of these charges [of larceny of a motor vehicle and operating after suspension] was not clear or specific enough adequately to inform the defendant of the elements of the charged crimes").

The only instance where the charge becomes self-explanatory is when the defendant is fully informed of all of the elements through an unambiguous recitation of facts. In *Commonwealth* v. *DeCologero,* 49 Mass. App. Ct. at 97, the court determined that "trafficking in cocaine" became self-explanatory because the prosecutor recited a lengthy narrative of facts that encompassed all the elements of the charge, and the judge used the term "marketing" and stated the amount of cocaine that the Commonwealth was required to prove. Also, in *Commonwealth* v. *Wiswall,* 43 Mass. App. Ct. at 723, "assault with intent to kill" was considered self-explanatory only after the defendant had "acknowledged that, during an extended police chase, he was driving a stolen car, saw Officer Collier in the roadway ahead of him, and 'changed lanes and tried to run Collier over.' " The court determined that the defendant acknowledged the missing element of intent when he admitted that he "tried to run Collier over." *Ibid.*

In the present case, however, the prosecutor's recitation of the facts failed to include all the elements of the offense of rape. Even though the term "rape" is commonly known and used by lay persons, it does not mean that the legal elements of that offense were known by the defendant. See *Commonwealth* v. *Del-Verde*, 398 Mass. 288, 297 (1986) ("a court may not convict unless there are sufficient facts on the record to establish each element of the offense"). Indicating only that the defendant agreed that he did something "forcibly" to the victim, the record does not establish that the defendant knew what that "something" was. Just because the defendant may have assumed a lay person's definition of "rape" as forced penile-vaginal intercourse does not preclude the possibility that he may have believed that acts other than forced penile-vaginal intercourse constituted rape. Although, as the court points out, the defendant need not "have been aware of all possible legal permutations of rape," the record must contain sufficient facts to establish each element of the offense and cannot rely on a lay person's definition to fill in the gaps.

Under an *Alford* plea, a defendant who professes his innocence may nevertheless enter a plea of guilty and " 'voluntarily, knowingly and understandingly consent to the imposition of a prison sentence,' if the State can demonstrate a 'strong factual basis' for the plea. [*North Carolina* v.] *Alford*, [400 U.S. 25,] 37-38 [(1970)]. Whether the defendant admits to the crime in open court, or the Commonwealth shows the factual basis for the plea, a court *may not* convict unless there are *sufficient facts on the record* to establish *each element* of the offense" (emphasis added). *Commonwealth* v. *DelVerde*, 398 Mass. at 297. This is precisely the issue before us, because even though the prosecutor demonstrated a factual basis for the plea, he failed to enter any facts in evidence that would establish each element of the offense. This requirement should not be considered "hypertechnical parsing." We do not ask prosecutors to recite the factual basis of the alleged crime in "minute detail," but we do require sufficient detail that a reviewing court can determine if a plea was intelligently made. A plea is intelligently made only when the defendant can admit to facts entered on the record that establish each element of the crime with which he is charged. We are left here, for the first time in

this Commonwealth, with the principle that the simple designation of a crime, and nothing more, is sufficient notice of both the nature and specific elements of the charge a defendant faces.