## COMMONWEALTH *vs.* LARRY H. SHERMAN, JR.

Bristol. March 6, 2008. - May 2, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* New trial, Plea. *Evidence,* Guilty plea. *Rape.*

A Superior Court judge erred in allowing the criminal defendant's motion for a new trial, where the defendant's admission at his plea hearing to an act (rape) whose widely known common meaning implied sexual intercourse, together with his admission to the charge's underlying facts that strongly indicated sexual or unnatural sexual intercourse with the victim, sufficiently constituted an admission to the element of rape requiring sexual or unnatural sexual intercourse, and the defendant did not dispute that he had admitted to facts sufficient to establish the other elements of a rape charge [334-338]; further, the judge conducted a sufficient probe into the voluntariness of the defendant's pleas [338-339], and there was no merit to the defendant's argument that the Commonwealth's case against him was so weak that he could only have pleaded guilty involuntarily [339-340].

A criminal defendant was not entitled to withdraw his guilty pleas on the basis that the plea judge did not make an express determination that the change of pleas was voluntary and intelligent, where such a determination could be implicit as long as the record supported a determination that the plea was voluntary and intelligent [340]; moreover, the judge's minor deviation from the prescribed procedure (permitting the court clerk to announce that the judge had accepted the defendant's guilty pleas before proceeding with sentencing) did not entitle the defendant to withdraw his pleas [340-341], nor did the judge's slip in informing the defendant of the maximum possible sentence for aggravated rape rather than for rape, where the slip did not harm the defendant, as the judge did not exceed the agreed-on sentence recommendation [341-342].

INDICTMENTS found and returned in the Superior Court Department on January 14, 1993.

A motion for a new trial, filed on April 14, 2003, was heard by *David A. McLaughlin,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David J. Barend* for the defendant.

*Tara Blackman,* Assistant District Attorney, for the Commonwealth.

SPINA, J. Nearly ten years after he had pleaded guilty to rape and assault and had been sentenced, the defendant, Larry H. Sherman, Jr., moved for a new trial. The motion was granted on the ground that his guilty pleas had not been made intelligently. A judge in the Superior Court concluded that the record of the hearing where he changed his pleas to guilty "does not demonstrate that the defendant was advised of the elements of the offense of rape, nor that the defendant admitted facts sufficient to display he understood the elements of the offense independent of any explanation from the court or from counsel." The Commonwealth appealed, and the Appeals Court reversed the judge's order. *Commonwealth* v. *Sherman*, 68 Mass. App. Ct. 797 (2007). We granted the defendant's application for further appellate review. We reverse the order granting a new trial.

*Background.* The defendant was indicted in January, 1993, for the crimes of aggravated rape and assault with intent to commit murder. On May 12, 1993, following plea negotiations with the Commonwealth, he offered to plead guilty to so much of the indictment charging aggravated rape as alleged rape and to so much of the indictment charging assault with intent to commit murder as alleged simple assault. A judge in the Superior Court held a hearing on the defendant's offer to change his pleas. The prosecutor at that hearing stated that the defendant and the Commonwealth had agreed on a disposition and that the defendant would plead guilty to assault and rape. The prosecutor further stated that, if the case went to trial, he would expect to prove the following facts: on the night the alleged crimes occurred, residents heard screams coming from a nearby cemetery; when police officers arrived at the scene, they observed a young woman running away from the cemetery; she was naked from the waist down and had a T-shirt tied around her neck; she identified the defendant as the one who had "picked her up"; and the defendant had taken her to the cemetery and "forcibly raped her when she declined to have sex with him voluntarily" in exchange for money. The judge asked the defendant if this recitation of facts was true, and the defendant said that it was.

The judge then explained to the defendant the rights that one loses when one pleads guilty to a crime. The defendant indicated

that no one had induced him to plead guilty by way of promises or offers of any kind and that he was satisfied that his attorney, in advising him to plead guilty, was acting only in his best interests. The defendant further indicated that he had understood everything that the judge had said about the plea procedure and indicated that he had no questions for the judge. The defendant then pleaded guilty to rape and assault. Conformably with the agreed-on recommendation, the judge imposed a sentence of from six to ten years with six months to be served on the rape indictment, and the assault conviction was placed on file. The judge deemed that the defendant, having spent time in custody, already had served those six months. The balance of the sentence was to be suspended for a three-year period.[1]

On October 7, 1999, after a different judge found that the defendant had violated the terms of his probation, he was ordered to serve the balance of his sentence. In a motion for a new trial filed on April 14, 2003, the defendant sought to withdraw his original pleas of guilty to the charges of rape and assault on the ground that his guilty pleas had not been made intelligently and voluntarily. The judge who conducted the original plea hearing had retired. A third judge concluded that the defendant's change of plea was voluntary but not intelligent, and he granted the defendant's motion for a new trial.

*Discussion.* "A motion for new trial is the appropriate device for attacking the validity of a guilty plea." *Commonwealth* v. *Huot*, 380 Mass. 403, 406 (1980). The motion "is addressed to the sound discretion of the trial judge." *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995). However, we may reverse a judge's order granting a new trial where the judge committed "a significant error of law or other abuse of discretion in allowing a defendant's motion for a new trial." *Commonwealth* v. *Martin*, 427 Mass. 816, 817 (1998).

The parties dispute whether the judge erred in concluding that the defendant's pleas were not intelligent. The defendant argues that the pleas were not intelligent because, he states, he did not admit to facts that necessarily implied that he had sexual

---

[1]The transcript of the plea hearing indicates that it was a three-year period, while the docket entry indicates that it was a two-year period. The defendant's probation was extended because of a default of his probation obligations.

intercourse with the victim. The Commonwealth, on the other hand, argues that the pleas were intelligent because, it states, the prosecutor's recitation of facts put the defendant on sufficient notice of the essential elements of rape.

A defendant must receive "real notice of the true nature" of the charge for which he intends to make a guilty plea. *Commonwealth* v. *Sullivan*, 385 Mass. 497, 509 (1982), quoting *Henderson* v. *Morgan*, 426 U.S. 637, 645 (1976), and cases cited. A guilty plea generally may be withdrawn or nullified if the defendant did not make the plea voluntarily and intelligently. *Boykin* v. *Alabama*, 395 U.S. 238, 242-243 (1969). *Commonwealth* v. *Sullivan, supra* at 504. "[A] guilty plea is involuntary and cannot serve as an intelligent admission of guilt if the defendant is ignorant of a critical element of the offense and makes no factual statement or admission necessarily implying that element." *Commonwealth* v. *Colantoni*, 396 Mass. 672, 678-679 (1986), citing *Henderson* v. *Morgan, supra* at 646. A guilty plea generally is voluntary and an intelligent admission of guilt "if the record shows affirmatively . . . either: (1) an explanation by the judge of the elements of the crime; or (2) a representation that counsel has explained to the defendant the elements he admits by his plea; or (3) defendant's statements admitting facts constituting the unexplained elements" (citations omitted). *Commonwealth* v. *Colantoni, supra* at 679. See *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 717 (1997). In this appeal, we are concerned with the third method for showing the intelligence of the defendant's guilty pleas as it relates to one critical element of rape, namely, the element of sexual intercourse[2] or unnatural sexual intercourse.[3] G. L. c. 265, § 22 (*b*).

In the present case, as the Appeals Court correctly noted, the defendant relied solely on the contemporaneous record of the

---

[2]"By sexual intercourse, the Legislature undoubtedly intended the traditional common law notion of rape, the penetration of the female sex organ by the male sex organ, with or without emission." *Commonwealth* v. *Gallant*, 373 Mass. 577, 584 (1977).

[3]"[T]he definition of 'unnatural sexual intercourse' must be taken to include oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of a part of a person's body or other object into the genital or anal opening of another person's body." *Commonwealth* v. *Gallant, supra.*

plea hearing to meet his burden to show that the pleas were not made intelligently. *Commonwealth* v. *Sherman*, 68 Mass. App. Ct. 797, 800 (2007). In particular, he argued that his admission to facts stated by the prosecutor did not constitute the elements of rape. Our inquiry as to the intelligence of the pleas therefore is limited to whether the defendant's admissions at the plea hearing did constitute the elements of rape and, specifically, whether they constituted the one element of rape disputed by the parties, namely, sexual or unnatural sexual intercourse. See *Commonwealth* v. *Foster*, 368 Mass. 100, 108 nn.6-7 (1975); *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 492 (1985).

Rape is not merely a technical legal term but also a widely known layman's term. The legal meaning of rape implies sexual or unnatural sexual intercourse. G. L. c. 265, § 22 (*b*). The common meaning of rape (where it involves sexual conduct) implies sexual intercourse. Webster's New Collegiate Dictionary 949 (1980) (rape is *"sexual intercourse* with a woman by a man without her consent and chiefly by force or deception" [emphasis added]). American Heritage Dictionary of the English Language 1081 (1970) (rape is "[t]he crime of forcing a female to submit to *sexual intercourse"* [emphasis added]). Random House Dictionary of the English Language 1191 (1973) (rape is "the act of physically forcing a woman to have *sexual intercourse"* [emphasis added]). Pocket Oxford American Dictionary of Current English 659 (2002) (rape is "the act of forcing another person to have *sexual intercourse"* [emphasis added]). The court should not ignore the common meaning of the word just because the word also has a more technical legal meaning. Each of these meanings at least implies sexual intercourse.[4]

The defendant's admissions at his plea hearing strongly support the conclusion that he engaged in sexual or unnatural sexual intercourse with the victim. In particular, the defendant admitted that he "forcibly raped [the victim] when she declined to

---

[4]The Appeals Court's holding in *Commonwealth* v. *Brattman*, 10 Mass. App. Ct. 579 (1980), is inapplicable here. That case did not address whether the common meaning of rape includes sexual or unnatural sexual intercourse or whether the admissions of a defendant amounted to an admission of rape; rather, it addressed whether the common meaning of rape could cure a defective jury instruction. *Id.* at 583-584. That is a different question from the one before us now.

have sex with him voluntarily" for money, a statement that suggests that he made her do involuntarily what she would not do voluntarily, namely, have sex with him.[5] In addition, he admitted that the victim ran away screaming and naked from the waist down, an admission that provides still further support for the conclusion that the defendant had sexual or unnatural sexual intercourse because the victim's fear and flight were in line with what one might expect from someone who had just been raped and because, being partially undressed, the victim was in a position where the defendant more easily could have engaged in sexual or unnatural sexual intercourse with her.[6]

As indicated in the Appeals Court's thoughtful dissent, an admission to a crime generally will not function in itself as an admission to all of the elements of that crime. *Commonwealth* v. *Sherman, supra* at 808-810 (Trainor, J., dissenting). See *Commonwealth* v. *Jones*, 60 Mass. App. Ct. 88, 91 (2003); *Commonwealth* v. *Pixley*, 48 Mass. App. Ct. 917, 918 (2000). Here, however, we do not merely have an admission to a crime. We have an admission to an act whose widely known common meaning implies sexual intercourse. We have, in addition, an admission to the charge's underlying facts that strongly indicate sexual or unnatural sexual intercourse. Contrast *Commonwealth* v. *Barry*, 51 Mass. App. Ct. 9, 10 (2001) (guilty plea defective where no admission to recited statement of underlying facts); *Commonwealth* v. *Pixley, supra* (same); *Commonwealth* v. *Correa*, 43 Mass. App. Ct. 714, 719 (1997) (same). These admissions, taken together, sufficiently constitute an admission at least to a single element of rape, namely, sexual or unnatural sexual intercourse. Contrast *Commonwealth* v. *Jones, supra* at 91 (plea unintelligent in part because designation of offense had to supply all elements of crime charged). Furthermore, the

[5]This admission alone provides strong, although perhaps not conclusive, support for a conclusion that the defendant admitted to sexual or unnatural sexual intercourse, for the word "sex" in common parlance does not always imply "sexual intercourse." Sanders, Would You Say You "Had Sex" If . . . ?, 281 JAMA 275, 276 (1999).

[6]These admissions, especially when considered with the admission that the defendant "forcibly raped" the victim, clearly tend toward showing that the defendant engaged in sexual or unnatural sexual intercourse. Contrast *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 204 (2000) (guilty plea defective where admissions did not clearly tend toward showing element of crime).

defendant does not dispute that he admitted to facts sufficient to establish all of the elements aside from sexual or unnatural sexual intercourse. We therefore conclude that the defendant sufficiently admitted to all of the elements of rape where he admitted that he forcibly raped a woman when she refused to have sex with him voluntarily and that woman subsequently ran away screaming and naked from the waist down. Although the plea hearing in this case was by no means exemplary, the defendant's guilty pleas nevertheless were intelligent, and it was error to grant the defendant's motion to withdraw on the ground that it was not intelligent.

The defendant argues that the motion judge should have granted his motion to withdraw his guilty pleas because the judge who accepted his plea failed to conduct a "real probe" into whether the defendant's pleas were voluntary.[7] "A plea is voluntary if entered without coercion, duress, or improper inducements." *Commonwealth* v. *Berrios*, 447 Mass. 701, 708 (2006), cert. denied, 127 S. Ct. 2103 (2007). In a guilty plea colloquy, a judge must conduct "a real probe of the defendant's mind" to determine that the plea "is not being extracted from the defendant under undue pressure." *Commonwealth* v. *Foster*, 368 Mass. 100, 107 (1975). *Commonwealth* v. *Fernandes*, 390 Mass. 714, 719 (1984). While "[t]he question whether a defendant was subject to undue pressure to plead guilty must be considered in some manner on the record . . . [n]o particular form of words need be used in the required inquiry of a defendant" (citations omitted). *Commonwealth* v. *Quinones*, 414 Mass. 423, 434 (1993).

In the present case, the judge conducted a sufficient probe into the voluntariness of the defendant's pleas. The judge explained to the defendant his trial rights and explained that, by pleading guilty, he would waive those rights. When the judge

---

[7]The defendant did not file a cross appeal on the voluntariness issue or the issues governed by Mass. R. Crim. P. 12, as amended, 399 Mass. 1215 (1987). However, to avoid the " 'possibility of continuing controversy over the same evidence,' . . . we will permit [the defendant] to raise [those issues] 'under the umbrella of the government's appeal.' " *Commonwealth* v. *Catanzaro*, 441 Mass. 46, 51 n.8 (2004), quoting *Commonwealth* v. *Boswell*, 374 Mass. 263, 267 (1978), and *Commonwealth* v. *Mottola*, 10 Mass. App. Ct. 775, 782 (1980).

asked whether he understood these rights, the defendant answered that he did. The judge then asked, "Has anyone induced you to plead guilty by way of promises or offers of any kind?" The defendant answered, "No, sir." The judge also asked, "Are you satisfied that in advising you to plead guilty your attorney is acting only in your best interests?" The defendant answered, "Yes." Finally, the judge asked the defendant whether he understood everything that the judge had said about the plea procedure and whether the defendant had any questions. The defendant answered that he understood everything and that he had no questions. The record thus demonstrates that the judge engaged in a number of specific inquiries whether the defendant was under undue pressure to plead guilty and presented the defendant with a number of opportunities to inform the court of any such undue pressure. The motion judge did not err where he concluded that the probe into the voluntariness of the defendant's plea had been sufficient. See *Commonwealth* v. *Quinones, supra* at 435.

Although his argument is not entirely clear, the defendant also seems to argue that his pleas were involuntary because he would not have voluntarily agreed to an unfavorable disposition where, as here, the Commonwealth was unable to locate the victim, who allegedly was a drug addict and a prostitute, and who had been convicted in the past of various offenses.[8] That is, the defendant appears to argue that the Commonwealth's case against him was so weak that he could only have pleaded guilty involuntarily. This argument is unpersuasive. First, the defendant gave no indication that his pleas were involuntary even after the judge had engaged in a "real probe" into the voluntariness of his plea. Second, the defendant learned at the very latest at the plea hearing that the Commonwealth could not locate the victim to prepare her for trial, yet the transcript of the plea hearing contains no indication that the defendant at that time expressed any concerns about the victim's absence or raised any objections after hearing that the Commonwealth

[8]The defendant filed an affidavit addressing the voluntariness of the guilty pleas. Our review here, unlike our review of the issue of intelligence, is not limited to the contemporaneous record. See *Commonwealth* v. *Foster*, 368 Mass. 100, 108 nn.6-7 (1975); *Commonwealth* v. *Sherman*, 68 Mass. App. Ct. 797, 800 (2007).

could not locate her. Third, the absence of the victim and the victim's alleged vulnerabilities as a potential witness may have weakened the Commonwealth's case, but the record does not indicate that the Commonwealth would have been wholly unable to establish its case beyond a reasonable doubt. Finally, the disposition was favorable to the defendant to the extent that, as part of the plea agreement, the defendant immediately was released from custody on the basis of time already served. Given these circumstances, the defendant very well could have made the pleas voluntarily. The judge did not err where he concluded that the defendant's pleas were voluntary.

The defendant next argues that he is entitled to withdraw his guilty pleas because the plea judge did not make an express determination that the change of plea was voluntary and intelligent. Rule 12 (a) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 866 (1979), states that the judge "shall not accept such a plea [of guilty] . . . without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea." The determination can be implicit as long as the record supports a determination that the plea was voluntary and intelligent. See *Commonwealth* v. *Hiskin,* 68 Mass. App. Ct. 633, 642 (2007). An appellate court may infer such an implicit determination of voluntariness from the contemporaneous imposition of a jointly recommended sentence at the plea hearing. *Id.* at 642-643. In the present case, the pleas were intelligent, and the judge sufficiently probed the defendant as to the voluntariness of his pleas. Furthermore, the judge accepted the defendant's guilty pleas and imposed the jointly recommended sentence at the plea hearing. Based on these facts, we can and do conclude that the judge implicitly determined the pleas to be voluntary and intelligent and that the record supports such a determination. The judge did not act contrary to rule 12 (a) (2), and the defendant is not entitled to a new trial on the basis of an alleged violation of that rule.

The defendant further argues that he is entitled to withdraw his guilty pleas because, contrary to Mass. R. Crim. P. 12 (c) (5) (B), 378 Mass. 866 (1979), the judge did not state his acceptance of the defendant's guilty pleas before proceeding with sentencing.

Rule 12 (c) (5) (B) provides: "At the conclusion of the hearing the judge shall state his acceptance or rejection of the plea." In the present case, the court clerk, not the judge, announced at the plea hearing that the court had accepted the defendant's pleas of guilty. This is a common method of reporting the judge's decision, which a judge may rely on to satisfy himself that the clerk will record correctly his decision on the docket. (But see note 1, *supra*.) The judge said nothing when the clerk openly pronounced that the court had accepted the defendant's pleas of guilty, a fact signifying that the clerk correctly understood the judge's decision. That same day the clerk caused the defendant's guilty pleas to be entered on the docket. The judge's minor deviation from the precise language of rule 12 (c) (5) (B) does not entitle the defendant to withdraw his guilty pleas. See *Commonwealth* v. *Glines*, 40 Mass. App. Ct. 95, 99 (1996).

The defendant argues, in addition, that the judge stated that the maximum possible sentence for one of the defendant's crimes was a life sentence (maximum sentence for aggravated rape), instead of a twenty-year sentence (maximum sentence for rape), and that he is entitled to withdraw his guilty pleas because of this deviation from the requirements of Mass. R. Crim. P. 12 (c) (3), 378 Mass. 866 (1979). Rule 12 (c) (3), entitled "Notice of Consequences of Plea," provides: "The judge shall inform the defendant . . . where appropriate, of the maximum possible sentence on the charge . . . ." However, "[a] slip in the protocol prescribed by rule 12 does not entitle a defendant to withdraw a guilty plea if it 'did not significantly affect the substance of the particular requirement.' " *Commonwealth* v. *Glines*, *supra* at 99, quoting *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 496 (1985). The substance of rule 12 (c) (3), as its title indicates, is to provide a defendant with notice of the consequences of his pleas. That is, the provision is meant to provide notification of what might happen if the defendant accepts a plea agreement. Armed with this information, the defendant will be better informed whether he should change his pleas, for he will know that he cannot receive, as a result of pleading guilty, a punishment greater than that set forth by the judge as the maximum possible sentence. Consequently, if rule 12 (c) (3) were applicable here, then the judge's error would not "significantly affect the substance" of

rule 12 (c) (3), because the defendant did not, and could not, receive as a consequence of his guilty pleas a punishment greater than that set forth as the maximum possible sentence.[9]

Although the defendant focuses on rule 12 (c) (3), we note that this case falls more squarely within the bounds of Mass. R. Crim. P. 12 (c) (2), as amended, 399 Mass. 1215 (1987). Rule 12 (c) (2) provides: "If there were sentence recommendations contingent upon the tender of the plea, the judge shall inform the defendant that he will not impose a sentence that exceeds the terms of the recommendation without first giving the defendant the right to withdraw his plea." The rule "contemplates that the judge will not exceed an agreed upon sentence recommendation without giving the defendant the right to withdraw his plea." *Commonwealth* v. *Clerico*, 35 Mass. App. Ct. 407, 412 (1993). Here, there was an agreed-on sentence recommendation, and the judge neglected to state that he would not impose a sentence that exceeded the terms of that recommendation. Nevertheless, the judge did not exceed the terms of the recommendation. That is, the defendant did not receive a sentence more onerous than he expected. He received the agreed-on sentence. He received the benefit of his plea agreement. The judge's deviation from rule 12 (c) (2) did no harm to the defendant. The defendant is not entitled to withdraw his guilty plea on account of the judge's failure to follow rule 12 (c) (2). *Commonwealth* v. *Glines, supra.*

The order granting the defendant's motion for a new trial is reversed and a new order denying the motion shall enter.

*So ordered.*

---

[9]The defendant suggests that a misstatement such as the judge made here could affect the voluntariness of a defendant's plea. However, the defendant nowhere indicates that it had such an effect in this case. That is, neither the transcript of the plea hearing nor the defendant's affidavit in support of his motion for a new trial indicates that the misstatement undermined the voluntariness of the defendant's pleas.