NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1262                                          Appeals Court


COMMONWEALTH  vs.  LARON WALLACE.


No. 15-P-1262.

Hampden.     April 13, 2017. - July 28, 2017.

Present:  Kafker, C.J., Grainger, & Massing, JJ.[1]


Controlled Substances.  Constitutional Law, Plea, Conduct of
     government agents, Sentence.  Due Process of Law, Plea,
     Sentence.  Practice, Criminal, Plea, New trial, Conduct of
     government agents, Sentence, Affidavit.



Indictments found and returned in the Superior Court
Department on April 20, 2011.

A motion to withdraw a plea of guilty was heard by Tina S.
Page, J.


Sara A. Laroche for the defendant.
Benjamin Shorey, Assistant District Attorney, for the
Commonwealth.


KAFKER, C.J.  The defendant, Laron Wallace, appeals from

the denial of his motion to withdraw his guilty plea to

possession with intent to distribute a Class B substance, G. L.

_____

[1] Justice Grainger participated in the deliberation on this
case prior to his retirement.

c. 94C, § 32A(c). He argues that the motion judge abused her discretion in denying the motion because of the Commonwealth's misconduct in a prior case of his involving the chemist Sonja Farak, which came to light after the guilty plea was entered in this case. Although Farak was not the chemist in this case, the defendant contends that her misconduct in the prior case casts doubt upon the justice of this plea because he considered the concurrent sentences he received in the two cases to be interrelated. Essentially he contends that because his motion for a new trial was allowed and his sentence reduced in the other case involving Farak, the same should occur in this case. For the reasons that follow, we affirm the denial of the motion to withdraw the guilty plea.

Background. The following facts are undisputed. On March 2, 2011, the defendant was arrested by Springfield police executing a search warrant at an apartment located within 100 feet of a public park. The defendant was observed with a bag containing thirty-seven rocks of a substance later determined to be crack cocaine, packaged in smaller individual bags, at his feet. A search of the defendant's person revealed $378 in cash and two cellular telephones. Police also found two digital scales in the apartment. The defendant was indicted in Superior Court, docket no. 2011-00300 (the 2011 case) on two counts: (1) possession with intent to distribute a Class B substance,

subsequent offense, G. L. c. 94C, § 34A(d); and (2) a drug violation in a school or park zone, G. L. c. 94C, § 32J, commonly known as the "school zone" statute.

At the time of his arrest, the defendant was at liberty on bail and awaiting trial on docket no. 2010-00514 (the 2010 case), another drug distribution case before the same court. In July of 2011, the 2010 case proceeded to a jury trial. At trial, Farak, a chemist at the Department of Public Health's State Laboratory Institute in Amherst (Amherst lab) testified that the substance seized from the defendant was cocaine. The Commonwealth also presented a drug certificate, created and signed by Farak, stating that the seized substance was cocaine. The jury convicted the defendant on both counts in that case, and the trial judge sentenced him to a total of seven years of incarceration.

Following his conviction in the 2010 case, the defendant and the Commonwealth reached a plea agreement in the 2011 case. The plea bargain provided that (1) the defendant would plead guilty to possession with intent to distribute a Class B substance, first offense; (2) the Commonwealth would file a nolle prosequi on the school zone charge; and (3) the parties would jointly recommend a sentence of five years to five years and one day, to be served concurrently with the defendant's seven-year sentence in the 2010 case.

At the plea colloquy for the 2011 case, the Commonwealth stated that the recommended sentence "is . . . based on what the Commonwealth believes that we could prove with regard to [the defendant's] level of involvement in this particular investigation. But we feel [five years] is an appropriate recommendation given [the defendant's] history and the fact that he's serving the seven-year minimum mandatory sentence." The defense counsel told the plea judge that the recommended sentence would not "disturb" the defendant's seven-year sentence, but "[would] be within it," and asked the judge to adopt the recommendation because it gave the defendant "some light at the end of the tunnel." The judge expressed concern that the defendant had committed a new drug offense while awaiting trial for the previous one, and called the 2011 case a "case[] that really scream[s] for the imposition of the subsequent offender portion of the indictment." The judge stated that she was adopting the parties' recommendation "[w]ith great reluctance." The defendant was sentenced to a five-year State prison term, "to run concurrent with the sentence imposed [in the 2010 case]."

In 2013, after Farak was arrested for tampering with evidence from the Amherst lab, the defendant filed a motion for a new trial in the 2010 case, which was granted. On January 9, 2014, the defendant pleaded guilty on the first count of the

2010 case, to the lesser-included offense of possession with intent to distribute a Class B substance. The Commonwealth filed a nolle prosequi on the school zone charge. The defendant received a new sentence of three and one-half years. There was no discussion of the concurrent five-year sentence received in the 2011 case during the colloquy in the 2010 case.

Six months later, the defendant filed a motion to withdraw his guilty plea in the 2011 case, claiming that the intent of his guilty plea was that he would not have to serve a sentence any longer than the sentence in the 2010 case. The defendant argued that, because his sentence in the 2010 case had been reduced to three and one-half years following Farak's misconduct, he would not receive the intended benefit of his plea in the 2011 case unless that sentence was also reduced accordingly. In support of his motion, the defendant attached an affidavit in which he stated, "had I known of the criminal activities of the Chemist Sonja Farak, I can't say whether I would have accepted a plea agreement in [the 2010 case] because [it] may not have resulted in a conviction." The motion judge, who had taken the defendant's plea in the 2011 case, denied the defendant's motion, reasoning that (1) the defendant did not establish the requisite nexus, per Commonwealth v. Scott, 467 Mass. 336, 351 (2014), between Farak's misconduct in the 2010 case and his plea in the 2011 case; (2) the defendant's stated

interpretation of his plea agreement was unreasonable; and (3) the defendant received the benefit of his plea in that his five-year sentence in the 2011 case was shorter than the original seven-year sentence in the 2010 case.

Standard of review.  We treat a motion to withdraw a guilty plea as a motion for a new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001).  Commonwealth v. Cotto, 471 Mass. 97, 105 (2015).  "Under Mass. R. Crim. P. 30(b), a judge may grant a motion for a new trial any time it appears that justice may not have been done."  Scott, supra at 344.  "Judges are to apply the standard . . . rigorously, and should only grant a postsentence motion to withdraw a plea if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth."  Commonwealth v. Fanelli, 412 Mass. 497, 504 (1992) (quotations omitted).  The decision whether to allow a motion to withdraw a guilty plea is left to the sound discretion of the motion judge.  Commonwealth v. Sherman, 451 Mass. 332, 334 (2008).  We show particular deference to the rulings of a motion judge who also presided over the plea colloquy.  See Scott, supra.

Discussion.  Due process requires that a guilty plea be intelligently and voluntarily made.  Commonwealth v. Furr, 454 Mass. 101, 106 (2009).  "Typically, a motion to withdraw a guilty plea will allege a facial defect in the plea procedures,

but a guilty plea also may be vacated as involuntary because of external circumstances or information that later comes to light."[2]  Cotto, supra at 105 (quotation omitted).  See Scott, supra at 345.  "A plea may be defective, for example, where it has been involuntarily induced by government misconduct that since has been discovered."  Commonwealth v. Ruffin, 475 Mass. 1003, 1003 (2016) (quotation omitted).

The Ferrara-Scott test.  In Scott, supra at 346, a case involving the convicted chemist Annie Dookhan, the Supreme Judicial Court, relying on Ferrara v. United States, 465 F.3d 278 (1st Cir. 2006), defined a two-prong test for analyzing a defendant's motion to withdraw a guilty plea for governmental misconduct.  First, the "defendant must show egregious misconduct by the government that preceded the entry of the defendant's guilty plea and that occurred in the defendant's case."  Cotto, supra at 106.  Second, the "defendant must demonstrate a reasonable probability that he or she would not have pleaded guilty had he or she known of the government misconduct."  Ibid.  Due to the "breadth and duration of Dookhan's malfeasance," the court also "established a special evidentiary rule" whereby a defendant seeking to withdraw a guilty plea in a case where Dookhan served as the chemist was

---

[2] The defendant does not allege any facial defect in the plea procedure; he bases his entire claim on the external circumstances argument.

"entitled to a conclusive presumption that egregious government misconduct occurred in the defendant's case," thereby satisfying the first prong of the analysis. Ibid. (quotation omitted).

In Cotto, supra at 107, the Supreme Judicial Court applied the Ferrara-Scott framework to a case involving Farak's misconduct. The court concluded that "Farak's misconduct constitutes the type of egregious misconduct that satisfies the first element of the first prong of the Ferrara-Scott analysis" and that her misconduct "is attributable to the Commonwealth." Ibid. The court also distinguished Scott, however, concluding that "based on the evidence of her misconduct that had been uncovered thus far," the defendant was not entitled to a conclusive presumption "that Farak's misconduct occurred in his case." Id. at 108. The court held that the evidence at that point was insufficient to establish that "Farak's misconduct constituted a systemic problem," unlike Dookhan's misconduct. Id. at 108, 110. The court also ordered further investigation.

Here, in the defendant's 2011 case, Farak played no role in the chemical analysis. Thus it is significantly different from either the Scott or Cotto cases where either Dookhan or Farak served as chemists in the cases under review. The defendant argues nonetheless that Farak's misconduct in the 2010 case should be imputed to his 2011 case because, had he known of the misconduct before pleading guilty in the 2011 case, "he would

have been aware of the real possibility of acquittal in the 2010 Case or the opportunity to bargain for a lower sentence in that case . . . and he would not have agreed to a sentence in the 2011 Case that was greater than the sentence in the 2010 Case."

This argument ignores express language in Scott holding that "the defendant must demonstrate that the misconduct occurred in his case." Scott, supra at 351.[3] The court also stated in Scott that it has "required the existence of such a nexus in similar cases." Ibid. See Commonwealth v. Ellis, 432 Mass. 746, 764-765 (2000) (motion for new trial properly denied when there was no evidence that police officers who had pleaded guilty to criminal wrongdoing in another case had engaged in any such wrongdoing in case on appeal).[4] Although we do not rule out the possibility that governmental misconduct in one case could contaminate another case, we conclude that Farak's misconduct in

---

[3] As explained above, in Scott, supra at 352-354, the court also stated that that requirement was met whenever Dookhan served as a chemist in the case given the extent of her misconduct.

[4] We note that even in cases where Farak was actually the chemist in the case being appealed, the court in Cotto was not prepared at that juncture to adopt the "conclusive presumption articulated in Scott [in regard to Dookhan] that egregious misconduct by Farak occurred in his case" because of her misconduct in other cases. Cotto, supra at 111. We do not, however, rely on the difference between the Cotto and Scott standards here, particularly in light of the ongoing investigation of Farak's misconduct ordered by the Supreme Judicial Court. Even under the "conclusive presumption" Scott standard, the defendant would not satisfy the first prong in the instant case.

the 2010 case is far too attenuated from the defendant's 2011 case to meet the express egregious misconduct requirements set out in Scott and Ferrara.  Here, the Commonwealth and the defense simply considered the effect of the prior sentence in the 2010 case, which did involve Farak, when recommending the concurrent sentence in the 2011 case, which did not involve her.  Thus, the first prong of the Ferrara-Scott test is not satisfied here.

The defendant also fails to satisfy the second prong.  Under the second prong "the defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of [the government's] misconduct."  Scott, supra at 354-355.  Here, the defendant does not even aver that, but for Farak's misconduct, he would not have pleaded guilty in the 2011 case.  See Scott, supra at 356.  "At a minimum, the defendant must aver to this fact."  Ibid.  Instead, the defendant states only that he "can't say" whether knowledge of Farak's misconduct would have changed his decision.  This is too indefinite to satisfy the second prong of the Ferrara-Scott framework, which requires the defendant to "demonstrate a reasonable probability that had he known of [the government's] misconduct, he . . . would have insisted on taking his chances at trial."  Id. at 358.

Even if the defendant's affidavit were more definitive about his intentions, it would still have been insufficient. The defendant must not only aver that he would have insisted on going to trial, but "[a]dditionally, the defendant must 'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" Id. at 356, quoting from Commonwealth v. Clarke, 460 Mass. 30, 47 (2011); Padilla v. Kentucky, 559 U.S. 356, 372 (2010). Additional factors that may be relevant to prove that the defendant would not have pleaded guilty had he known of the governmental misconduct at the time of his plea "may include whether the defendant had a substantial ground of defense that would have been pursued at trial or whether any other special circumstances were present on which the defendant may have placed particular emphasis in deciding whether to accept the government's offer of a plea agreement." Scott, supra.

The defendant's affidavit did not suggest any substantial grounds of defense. The defendant was found with a bag containing thirty-seven individually-packaged rocks of crack cocaine on the floor "directly in front of him." He had $378 in cash and two cellular telephones on his person. Other indicia of intent to distribute were found in the apartment. Importantly, Farak's misconduct in the 2010 case was completely unrelated to the evidence in the 2011 case.

As for special circumstances, the defendant relies on the concurrent nature and claimed interconnection between the two sentences. He contends that unless he is permitted to withdraw his guilty plea, he will have been deprived of the benefit of his bargain. "The touchstone for determining whether a defendant has been improperly denied the advantages he expected . . . is whether that defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise." Commonwealth v. Parzyck, 41 Mass. App. Ct. 195, 197 (1996), quoting from Commonwealth v. Santiago, 394 Mass. 25, 28 (1985). Here the defendant received the benefit of his bargain in the plea deal. The prosecutor did not promise concurrent sentences under all circumstances, and expressly relied on the defendant's prior criminal history. The defendant agreed to a sentence that would run concurrently with the seven-year sentence he was "already" serving. He received five years, which was within that sentence, as agreed. The judge simply stated that the sentences would run concurrently, and the defendant made no objection to the sentence in the 2011 case. The defendant also did not raise the supposed inseparability of the two sentences when he filed his motion for a new trial in the 2010 case, pleaded guilty, and received the reduced three and one-half year sentence. The defendant's interpretation of

the plea agreement in the 2011 case as inseparably keyed to the 2010 sentence, regardless of changes to the 2010 sentence and his criminal history, is therefore untenable.

Finally, the defendant was aware that the judge had significant reservations about even accepting the five-year recommended sentence. The defendant had "several prior convictions for the very same charge" and committed the offense while out on bail for a similar offense. For these reasons, the judge accepted the recommended sentence "with great reluctance," stating that the case "screame[d]" for more severe punishment. The judge warned the defendant that she could impose the maximum penalty, ten years, and that she "could even impose it from and after" the seven-year sentence he was serving. The judge, however, accepted the recommended sentence of five years, to run concurrently with the seven-year sentence. The school zone charge was also nolle prossed. In these circumstances the subsequent reduction of the seven-year sentence does not deprive the defendant of the benefit of this bargain. We thus conclude that the judge did not abuse her discretion in denying the defendant's motion to withdraw his guilty plea.

<u>Order denying motion to<br>withdraw guilty plea<br>affirmed</u>.